## Richmond.

### CITY OF NORFOLK V. GRIFFIN BROTHERS.

#### March 15, 1917.

1. LICENSES—*Municipal Corporations—Taxation.*—The charter of the city of Norfolk provides that: "For the execution of its powers and duties the city council may raise annually by taxes and assessments in said city, such sums of money as they shall deem necessary to defray the expenses of the same, and in such manner as it shall deem expedient, in accordance with the constitution and laws of this State and of the United States." Under this provision the municipality may tax other subjects than and in addition to those taxed by the State. It may also adopt a different method of laying the tax from that adopted by the State on the same subject—such as an *ad valorem* method instead of by license. But the city has not the power to divide a single taxable privilege, consisting of the right to conduct the business of a contractor, as classified and defined for the purpose of State taxation in the form of a State license, into several businesses so as to require several separate city licenses, one for each of the elements of right named in the city ordinance, which all accrue to the citizen under one State license.

2. LICENSES—*Power of Municipalities.*—When the legislature embodied in the charter of the city of Norfolk the limitation that its action under the clause of its charter above quoted should be in a manner "in accordance with the constitution and laws of this State and the United States," the charter in effect itself provided that the municipality should not in acting thereunder enact any ordinance of classification for purposes of taxation in conflict with a classification adopted by the laws of the State; for the inevitable result of such a conflict in enactment between the State and the municipality would be a violation of the uniformity in operation of laws sought to be attained by the provisions of the Fourteenth Amendment to the Constitution of the United States—which purpose, indeed, of attainment of uniformity so far as practicable, also underlies the provision of the State Constitution and laws on the subject of taxation.

3. LICENSES—*Municipal Corporations—Construction of Powers.*— The general rule that the powers of a municipal corporation are to be construed with strictness is peculiarly applicable to the case of taxes on occupations.

Error to a judgment of the Circuit Court of the city of Norfolk, in a proceeding by the city against a contractor carrying on its business without a city license.   Judgment for the defendant.   The city assigns error.

*Affirmed.*

STATEMENT BY JUDGE SIMS.

This case arises under the following State license statute and license ordinance of the city of Norfolk.

The State license statute, so far as material, is as follows:

"Any person, firm or corporation accepting orders or contracts for doing any work on or in any building or structure, requiring the use of paint, stone, brick, mortar, wood, cement, structural iron or steel, sheet-iron, galvanized iron, metallic piping, tin, lead, electric wiring or other metal, or any other building material; or who shall accept contracts to do any paving or curbing on sidewalks or streets, public or private property, using asphalt, brick, stone, cement, wood or any composition, or who shall accept an order for or contract to excavate earth, rock, or other material for foundations or any other purpose, or who shall accept an order or contract to construct any sewer of stone, brick, terra cotta, or other material, shall be deemed a contractor.   Every contractor shall, on the first day of May in each year, procure from the commissioner of the revenue for the city or district in which he has his office a license to carry on the business of a contractor;  * * *  provided, that no further license shall be required by the State for

conducting said business in any part thereof; * * *"
Code 1904, p. 2238, sec. 90.

The city of Norfolk license ordinance, so far as material,
is as follows:

"59-A. Any person, firm or corporation, whether they
have office in the city of Norfolk or not, accepting orders
or contracts for doing any work on or in any building or
structure requiring the use of paint, wall decorations, stone,
brick, mortar, cement, wood, structural iron or steel, sheet-
iron, galvanized iron, metallic piping, tin or any other
building material or causing any work or labor to be done
thereon or therein for which compensation is paid or re-
ceived, shall for the privilege of transacting such business
in the city of Norfolk pay a license tax to be ascertained
in the following manner:

"General construction. For the privilege of doing the
carpenter work and superintending the general construc-
tion of any building operation, shall pay a license tax to
be ascertained in the following manner: If the gross amount
of all orders or contracts accepted for the year prior to
May 1, 1916, aggregates $15,000.00 or less, the said tax
shall be $15.00, and a further license tax of fifty cents for
each one thousand dollars or fractional part thereof in
excess of fifteen thousand dollars. And any person other
than the owner thereof who shall act as superintendent of
the erection, construction or repairs of buildings for which
a permit is required and which such work is not done under
a regular licensed person, shall pay the license tax required
in this section. The license, so far as applicable, shall be
estimated from the records and books as shown by the
building inspector for the year preceding. And the com-
missioner of the revenue shall consult the books of the
building inspector before issuing a license under this
section.

"In the event that a contractor or builder is beginning business, the license tax shall be estimated upon the probable amount of all orders or contracts for the year succeeding May 1, 1916, and any person who shall make a business of erecting or constructing houses for the purpose of selling or renting the same, and shall not employ therefor a contractor or person who shall act as superintendent who has paid the license tax and given the bond required by law, shall pay a license tax as above provided for. No license required under this section shall be transferred or prorated.

"The inspector of buildings shall issue no permit unless the applicant shall have complied with the law requirng a license or bond, where either is required.

"And, in the event said person, firm or corporation taking out the license as above provided for engages, as an incident to said contract or order, in the prosecution of any of the trades hereinafter specifically mentioned and defined in the succeeding paragraphs of this section, instead of subletting the same, he shall, in addition to the above license, pay the specific license on said trades as hereinafter defined.

"It shall be the duty of every person, firm or corporation accepting orders or contracts as herein provided, who sublets any portion of the work so contracted for, to notify the commissioner of revenue of such sub-letting, giving the names and addresses of all persons, firms or corporations to whom any portion of the work is sub-let, and, upon failure so to do, the general contractor shall be presumed to be prosecuting the trades incident to said contract or order on his own account and liable for the specific license taxes thereon as hereinafter provided.

"1. Brick masons. Any person, firm or corporation shall, for the privilege of transacting the business of brick masonry, hollow title partition work, terra cotta or any other masonry work usually done by brick masons, pay a license

tax of $35.00. No license required under this section shall be transferred or prorated.

"2. Plastering contractors. Any person, firm or corporation shall, for the privilege of transacting the business of erecting metal or wood laths, plastering, stucco work, or other work usually done by plasterers, pay a license tax of $25.00. No license required under this section shall be prorated or transferred.

"3. Roofing and sheet metal work. Any person, firm or corporation shall, for the privilege of furnishing or erecting metal, slate, tin, gravel or any other roofing, other than wood, including ornamental and sheet metal work, furnishing, repairing and installing hot air and latrobe heat, pay a license tax of $20.00. No license under this section shall be transferred or prorated.

"4. Cement and concrete work. Any person, firm or corporation shall, for the privilege of transacting the business of concrete and cement work, or the erection of building forms, or the installation of reinforcing steel for the same, pay a license tax of $50.00. No license required under this section shall be transferred or prorated.

"5. Painters and wall decorators. Any person, firm or corporation shall, for the privilege of doing painting, paper hanging or any other ornamental interior or exterior decorating, usually done by painters and decorators, pay a license tax of $20.00. No license required under this section shall be transferred or prorated.

"6. Stone masons. Any person, firm or corporation engaged in furnishing and erecting stone for any building operation shall pay for the privilege of doing such business in the city of Norfolk, a license tax of $25.00. No license required under this section shall be transferred or prorated.

"7. Any person, firm or corporation engaged in any other branch of the building trade not mentioned or provided for

in this ordinance, shall pay a license tax of $50.00. No license required under this section shall be transferred or prorated.

### FACTS OF THE CASE.

The material facts are as follows:

The defendants in error, defendants in the court below, hereinafter referred to as defendants, on July 7, 1916, accepted an order or contract for doing work on a building or structure in the city of Norfolk, which building or structure required the use of "paints, wall decorations, stone, brick, mortar, etc." On the same day, to-wit, July 7, 1916, the defendants applied to the commissioner of the revenue for the city of Norfolk and obtained from him a State license for accepting orders or contracts for doing work on or in any building or structure requiring the use of paint, etc., under the provisions of the State statute above quoted. At the same time the defendants applied to the same commissioner, the proper person authorized also to grant city licenses, for the same license from the city of Norfolk, which was not granted and could not be granted under the city ordinance above quoted, but the defendants were offered by said commissioner licenses under the provisions of said city ordinance necessary for them to carry out and perform their said order or contract, which the defendants refused to take out.

Thereupon, the defendants proceeded with and completed the said building or structure without any license from the city. By proceedings under other provisions of said ordinance, not necessary to quote, the defendants were charged in the police court with beginning the erection of said building without having a city license, contrary to said ordinance, which subjected them to a fine of $20.00 per day for each day of failure to pay said license taxes. The police justice dismissed the case with costs against the city. On

appeal by the city to the circuit court thereof, the judgment of the police justice was affirmed, and the appeal was dismissed, with costs against the city. From the latter judgment the writ of error in this case was awarded.

*George Pilcher* and *W. M. Grant,* for the plaintiff in error.

*Thomas W. Shelton* and *Alfred Anderson,* for the defendant in error.

SIMS, J., after making the foregoing statement, delivered the opinion of the court.

This case involves the single question of the power of the city of Norfolk to divide a single taxable privilege, consisting of the right to conduct the business of a contractor, as classified and defined for the purpose of State taxation in the form of a State license, into several businesses so as to require several separate city licenses, one for each of the elements of right named in the city ordinance, which all accrue to the citizen under one State license.

In the case of *City of Richmond* v. *Richmond, &c. R. Co.,* 21 Gratt. (62 Va.), at p. 617, in the opinion of the majority of this court delivered by Judge Staples, in regard to the cities of the State, it is said:

"The authorities also establish that these corporations are mere auxiliaries of the government, established for the more effective administration of justice; and that the power of taxation confided to them is a delegated trust. In the exercise of this power they act as agencies to the State and not by virtue of any inherent authority. And whether the legislature may or may not utterly destroy this power of taxation in particular cases, still it must be exercised under the control and authority of the State. The manner of apportionment, the power of assessment and collection, the

species of property which shall be the subject of taxation or exemption, are all matters purely within the legislative discretion, except where the Constitution ordains the rule."

In the case of *Ould, &c.* v. *City of Richmond,* 23 Gratt. (64 Va.), at p. 467, in the opinion of this court which was unanimous on this point (see *Humphreys* v. *Norfolk,* 25 Gratt. [66 Va.], at p. 99 for the point on which there was a division in the opinion of the court), it is said:

"The powers of public corporations are either express, implied or incidental. And except as to such powers as are incidental the charter itself, or the general law under which they exist, is the measure of the authority to be exercised. They have no inherent jurisdiction, like the State, to make laws or adopt regulations of government. They are governments of enumerated powers, acting by a delegated authority; so that while the State legislature may exercise such powers of government, within the description of legislative power, as are not expressly or impliedly prohibited, the local authorities can exercise those only which are expressly or impliedly conferred, and such as are incidental, subject to such regulations and restrictions as are annexed to the grant." Citing Cooley, 192.

This opinion then quotes from the charter of the city of Richmond a clause which, so far as material, is practically in the same words as the section of the charter of the city of Norfolk presently to be quoted, except that it refers in terms only to the laws of this State and of the United States, instead of to the Constitution and laws of this State and of the United States, and adds: "This clause confers the general power of taxation, except only as it may be limited *by the laws of the State* and of the United States." (Italics supplied.)

The city of Norfolk, in the instant case, relies on the following clause of its charter as conferring upon it the

power to require the license taxes as provided for in its ordinance above quoted, namely:

"For the execution of its powers and duties the city council may raise annually by taxes and assessments in said city, such sums of money as they shall deem necessary to defray the expenses of the same, and in such manner as it shall deem expedient, in accordance with the Constitution and laws of this State and of the United States."

We see, therefore, from this provision of the charter itself that the exercise of the general power of taxation delegated thereby by the legislature to the city of Norfolk may be limited by the laws of the State.

Now it is true, as counsel for the city of Norfolk contend, that such limitation, if it exists, must be by implication, *i. e.,* by necessarily implied intention on the part of the legislature. As said by this court in the case of *City of Norfolk* v. *Griffith-Powell Co.,* 102 Va., at p. 120, 45 S. E. 891, in reference to the very same clause of the charter of the city of Norfolk above quoted: "The legislature may, without doubt, at any time, impose such limitation upon the delegated powers of taxation as it sees fit; * * * by necessary implication in its general revenue laws or other enactment subsequent to its charter."

Does the State statute law above quoted, which classifies the business of a contractor such as is therein defined, as the subject of State license, taxation, limit the power of classification of the city under the clause of its charter above quoted to such State classification?

We think it does, by necessary implication.

It will be observed that this is not a question of power in the municipality to tax other subjects than and in addition to those taxed by the State. The city of Norfolk has that power under the clause of its charter above quoted. *City of Norfolk, &c.* v. *Norfolk Landmark, &c.,* 95 Va. 564, 28 S. E. 959. Nor is it a question of power to adopt a dif-

ferent method of laying the tax from that adopted by the State on the same subject—such as an *ad valorem* method instead of by license. It has that power, as was held by this court in the cases of *City of Norfolk* v. *Griffith-Powell Co., supra; Newport News, &c. Co.* v. *Newport News,* 100 Va. 157, 40 S. E. 645; *Bradley* v. *Richmond,* 110 Va. 521, 66 S. E. 872. But this is a case involving the question of the power of the city of Norfolk to divide and make of one subject of taxation, as classified and defined by State law for State taxation, a number of subjects for the purpose of city taxation as numerous as it may choose, except as limited by an almost limitless number of kinds of work a contractor may have to do and of material he may have to use. This is a new and open question in this State and depends for its decision upon different considerations from those involved in the cases above cited in this paragraph.

The subject we are considering involves a question of the power of the city of Norfolk to tax an occupation, as the subject of taxation.

The State of Virginia has, by its revenue laws, classified and defined certain occupations for the purpose of State taxation by the license system; among them, by the statute above quoted, the occupation of a contractor. It requires but slight reflection to perceive how oppressive upon occupations would be the effect of allowing municipalities to enact ordinances classifying and defining occupations for purposes of city taxation different from the classification made by State laws on the subject. This would be to allow the auxiliary government, established for the more efficient administration of justice, without any inherent powers to make laws or adopt regulations of government, to make laws and adopt regulations in conflict with those of the State, its creator. This conflict would destroy the uniformity of the operation of the tax laws of the city as compared with those of the State in respect to the persons upon whom

they are operative. So important is this subject and so fraught with danger of oppression that even the legislature is not without limitation upon its power of classification of occupations for purpose of taxation. The fourteenth amendment of the Constitution of the United States is held to apply to this subject, and it is held that, in the classifying of occupations and vocations by the legislature for the purpose of State taxation, this limitation upon its powers "requires the same methods to be applied impartially to all the constituents of the class which is subjected to taxation, so that the law shall operate equally and uniformly upon all persons in similar circumstances. * * * the *right to classify is not unlimited and unqualified* * * *" 4 Dillon Mun. Corp. (5th ed.), sec. 1409. (Italics are those of this author.) In a note to the section last quoted it is said: "*Classification for the purpose of taxation is subject to the rule of equality. In Santa Clara County* v. *Southern Pac. R. Co.* (C. C.), 18 Fed. 385, Mr. Justice Field said: 'The first section of the fourteenth amendment places a limit upon all the powers of the State, including among others that of taxation * * * Unequal taxation, so far as it can be prevented is, therefore, with other unequal burdens, prohibited by the amendment. There undoubtedly are and always will be more or less inequalities in the operation of all general legislation arising from the different conditions of persons, from their means, business or position in life, against which no foresight can guard. But this is a very different thing, both in purpose and effect, from a carefully devised scheme to produce such inequality, or a scheme, if not so devised, necessarily producing that result. * * * It is a matter of history that unequal and discriminating taxation, leveled against special classes, has been the fruitful means of oppression. * * * The power of oppression by taxation without due process of law is not thus permitted; nor the power by taxation to deprive any person of the equal protection of the laws."

When the legislature embodied in the charter of the city of Norfolk the limitation that its action under the clause of its charter above quoted should be in a manner "in accordance with the Constitution and laws of this State and the United States," the charter in effect itself provided that the municipality should not in acting thereunder enact any ordinances of classification for purposes of taxation in conflict with a classification adopted by the laws of the State; for the inevitable result of such a conflict in enactment between the State and the municipality would be a violation of the uniformity in operation of laws sought to be attained by the provisions of the fourteenth amendment to the Constitution of the United States—which purpose, indeed, of attainment of uniformity so far as practicable, also underlies the provisions of our State Constitution and laws on the subject of taxation. It is true that, but for said limitation in its charter, the inquiry with respect to uniformity of operation of its ordinances would be confined in its scope to the corporate limits of the city of Norfolk, and if such operation was uniform within those limits there would be no violation of the rule of uniformity referred to. But, with such limitation in its charter, it is plain that the legislature meant to make State boundary lines the limits of the scope of the inquiry as to the uniformity of the operation of such ordinances upon the subjects of taxation with respect to which the State has adopted a classification.

While, therefore, a conflict of the ordinance of the city of Norfolk with the State statute in such case, producing lack of uniformity in the operation of State and municipal laws, would not be a violation of the fourteenth amendment of the Federal Constitution, it would be a violation of its spirit, and a direct violation of the said limitation in the charter of the city itself.

We are not unmindful of the fact that the decisions of this court above mentioned of *City of Norfolk* v. *Griffith-Powell Co., Newport News, &c. Co.* v. *Newport News,* and *Bradley* v. *Richmond,* impinge in principle to some extent upon the conclusions expressed above, inasmuch as the difference in method of laying taxation thereby allowed to the municipalities of the State having such clause in their charter as that contained in the charter of the city of Norfolk, in some degree results in lack of uniformity in the burdens of taxation resting upon the citizens of the State. But the harmful results under consideration are not comparable to those which would arise from a difference in the classification of occupations as subjects of taxation, as aforesaid; and while we do not mean to impair the authority of the cases referred to as applicable to their allowance of a different method being adopted by a city from that of the State in the laying of taxes, we are unwilling to extend the doctrine of such cases to the classification of occupations as a subject of taxation.

Further, the rule is that the powers of the municipality are more strictly construed in respect to its taxation of occupations.

As said by Cooley on Taxation (3d ed.), p. 1101:

"*Construction of municipal powers.* The general rule that the powers of a municipal corporation are to be construed with strictness is peculiarly applicable to the case of taxes on occupations."

Further: We find the following specifically laid down and held by the following authorities:

"* * * a city cannot divide a single taxable privilege and require a separate license for each of the elements of right that accrue to citizens thereunder." Cooley on Taxation (3d ed.), p. 1103. Citing *Ex Parte Sims,* 40 Fla. 432, 25 So. 280, and *Canova* v. *Williams,* 41 Fla. 509, 27 So. 30.

The State revenue laws of the State of Florida, in imposing license taxes upon dealers in liquors grouped the various intoxicants therein designated as spirituous, vinous and malt liquors into one general class of merchandise, and provided that a dealer in any one or all of such several intoxicants should be subject to one State license tax. The city of Jacksonville acted under the special authority of its charter to "license and tax privileges," and under the power conferred upon municipalities generally by the general revenue laws of the State to "impose taxes on any business, profession or occupation not mentioned" in the general revenue acts. And the court held in the case of *Ex Parte Sims, supra,* that the city of Jacksonville had no power to adopt an ordinance requiring two city licenses of dealers in liquors, one license to sell spirituous and vinous liquors either at wholesale or retail, and malt liquors at retail, and another license to sell malt liquors at wholesale. The court in that case said (italics below are those of the court in such opinion) :

"The real inquiry, upon whose solution the ordinance must stand or fall, is this: Can the city of Jacksonville by ordinance, under the delegated general power to tax, segregate the several elements of right that accrue to the citizens under one *taxable privilege,* as recognized, defined and declared by the general statute law of the State, and tax each of such *elements* as a *separate* and *distinct* privilege of its own creation? * * *

"We are not now called upon to determine the extent of the city's power to fix the *amount* of licenses, or to create, classify or graduate licenses upon those occupations not specifically taxed by the State * * *

"When, as in this ordinance, the city undertakes to curtail the privilege by constructing out of its constituent elements two taxable privileges * * * * it has transcended

the authority delegated to it, and the provisions of such ordinance imposing such special tax upon the one element of the privilege are unauthorized and void, being inconsistent with and in conflict with the general provisions of law, and not authorized by its charter act. * * *

"The general rule is that statutes conferring authority to impose taxes must be construed strictly. *Moseley, Governor, &c.* v. *Tift,* 4 Fla. 402. Another general rule universally recognized is that delegated corporate powers to municipalities, particularly grants of power that are out of the usual range and that may result in public burdens, or which in their exercise touch the right of liberty or property, or any common law right of the citizen, must be strictly construed, and when in such construction there is any ambiguity or doubt as to the extent of the power, it is to be determined in favor of the State, or general public, and against the State's grantee. I Dillon's Mun. Corp., secs. 89-91; *Ex Parte Mayor of Florence in re Jones,* 78 Ala. 419; *City of Canton* v. *Nist,* 9 Ohio St. 439; *Kniper* v. *City of Louisville,* 7 Bush. (Ky.), 599; *City of Brenham* v. *Brenham Water Co.,* 67 Tex. 542, 4 S. W. 143; *Hanger* v. *City of Des Moines,* 52 Iowa 193, 2 N. W. 1105, 35 Am. Rep. 266; *City of Corvallis* v. *Carlile,* 10 Oregon 139, 45 Am. Rep. 134; *Mintburn* v. *Larue,* 23 How. (U. S.) 435, 16 L. Ed. 574; *Williams* v. *Davidson,* 43 Tex. 1; *Kirkham* v. *Russell,* 76 Va. 956."

The case of *Canova* v. *Williams, supra,* is to the same effect.

In the case of *Hotelling* v. *City of Chicago,* 66 Ill. App. 289, it was held that a city organized under the general law has power to license secondhand stores, but cannot require a separate license for each article in which such store deals. The court in this case said:

"The city has authority to license secondhand stores, but may not require one license for dealing in secondhand shoes, another for each separate article of clothing, furniture, etc., in which secondhand stores deal."

"The absurdity of the logical result, if it be held that separate licenses for every article may be required, is conclusive against the power."

For the foregoing reasons we find no error in the judment complained of, and it will be affirmed.

*Affirmed.*