# Richmond

CITY OF FREDERICKSBURG *v.* SANITARY GROCERY CO., INC.

March 11, 1937.

Present, Campbell, C. J., and Hudgins, Gregory,
Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*C. O'Conor Goolrick*, for the plaintiff in error.

*F. M. Chichester* and *A. Coulter Wells*, for the defendant in error.

BROWNING, J., delivered the opinion of the court.

In this case the City of Fredericksburg complains of the action of the corporation court of that city in overruling its motion to quash the application of the Sanitary Grocery Company, Inc., for the correction of an alleged erroneous assessment of license taxation, and requiring the city to restore to the applicant taxes in the sum of $1,000, which it had theretofore collected from it on account of such taxation.

The effect of the action of the court is to nullify and void the license tax feature of the city's ordinance which was adopted by its council on December 13, 1932, and which is as follows:

"On every person, firm or corporation, opening, operating or maintaining two or more stores or mercantile estab-

lishments in this city under the same general management, supervision or ownership, the following license fees: On two stores or more, $250 for each store in excess of one.

"The license fee herein prescribed shall be paid annually and shall be in addition to the license prescribed by section 8, and by any other section of this ordinance." Section 8 of the ordinance, referred to, levies a graduated tax on "every merchant or mercantile firm," based on purchases.

It is thus seen that here is assailed the power of the city to classify and tax, as such, the comparatively modern set-up in mercantile life known as the chain store.

While this is the debut, in this court, of this question in its entirety, it does not present an untraveled or unmarked course, for other courts have gone the way, notably the Supreme Court of the United States.

The legislative body of the city in this case derives its authority to enact the ordinance complained of from its charter, the appropriate provisions being these:

Section 22 of chapter 3, after providing that, "The council shall have all the general powers vested in it by the Constitution and laws of the State," provides that it shall further have power:

"(a) To levy, assess and collect taxes, and to borrow money within the limits provided by the Constitution of Virginia and by the statute laws of the Commonwealth."

Section 32, chapter 7, of the charter, is as follows:

"In the execution of its powers and duties, the City Council may levy and collect taxes, annually, by assessment in said City on all subjects, the taxation of which by cities is not forbidden by general law, to such extent as they shall deem necessary to defray the expenses of the same, and in such manner as they shall deem expedient (in accordance with the laws of this State and the United States)."

Section 33, chapter 7, is as follows:

"The City Council may levy a tax or license on any person, firm or corporation conducting any business or profession whatsoever in this City, except when prohibited by general law, whether a license may be required therefor by the

State or not, and may exceed the State license, if any be required."

The ordinance is attacked by the Sanitary Grocery Company, Inc., as "an effort to enact chain store legislation and as such has violated the rule of uniformity and has enacted a hybrid ordinance which is unreasonable, impracticable, violative of the policy of the State, destructive of rights and liberties of its citizens, discriminatory, on its face is double taxation, confiscatory and violative of constitutional and legislative grants."

The city epitomizes its position with the assertion that "there are only two real issues in this case, to-wit:

"(1). Does section 10 of the License Tax Ordinance constitute a division of plaintiff's business into its constituent elements with the levy of a separate tax on each element or incident thereof?

"(2). Is the City prohibited from classifying chain stores as such, because the Commonwealth has not adopted a similar classification?"

The city admits that it cannot subdivide an existing State classification so as to levy a separate tax on each subdivision. This was the holding in the case of *Norfolk* v. *Griffin Bros.*, 120 Va. 524, 91 S. E. 640. See also, McQuillen on Municipal Corporations, volume 3, section 1103.

The city urges that its ordinance does not offend this legal inhibition. It says, "On the contrary, section 10 creates an entirely new classification, which is not the division of an existing one, but is distinct and separate.

"In other words, the city has not attempted to subdivide merchants' licenses, but has created an entirely new classification, to-wit: 'chain store merchants.' "

It will be noted that in the case of *Norfolk* v. *Griffin Bros.*, *supra*, the municipality sought to tax the business of a general contractor by placing a separate license tax on each of the constituent elements and incidents of the business, as brick-masons, plasterers, roof and sheet metal workers, cement and concrete workers, etc. It was properly held that this could not be legally done.

This case presents no similarity to that case. Rather is it closely akin to the case of *Bradley & Co.* v. *Richmond*, 110 Va. 521, 66 S. E. 872, 874, where the action of the city of Richmond, under its charter provisions, which granted it general powers of taxation, classifying private bankers into distinct groups for the purpose of the imposition of a license tax, was assailed. In approving the ordinance of the city, this court said:

"It was competent for the council to assign private bankers to different classes, and the plaintiff in error was required to pay no greater license tax than all others in the same class with himself. In order to render the classification illegal, the party assailing it must show that the business discriminated against is precisely the same as that included in the class which is alleged to be favored. *Norfolk, P. & N. N. Co.* v. *Norfolk*, 105 Va. 139, 52 S. E. 851. This has not been shown in the present case. On the contrary, it appears that the business of the plaintiff in error is not precisely the same with that of other private bankers who are put in a different class and assessed with a less license tax."

The *Bradley Case* went to the Supreme Court of the United States and was reported in 227 U. S. 477, 33 S. Ct. 318, 320, 57 L. Ed. 603. The decision of the State court was affirmed and this was said:

"That some private bankers were put into classes which subjected them to less taxation than the class into which the plaintiff in error was placed is the only allegation which would tend to show discrimination. But there was evidence tending to show that the business done by the plaintiff in error and ten other persons or firms was that of lending money at high rates upon salaries and household furniture, while the kind of business by the others in the same general business was the lending of money upon commercial securities. Obviously the burden was upon the plaintiff in error to show an illegal and capricious classification. The State court said that he had failed to show that these private bankers favored in the classification were doing the same business."

The above quotation was incorporated in the opinion of this court in the case of *Commonwealth* v. *Bibee Grocery Co.*, 153 Va. 935, 151 S. E. 293, 294, in which was involved the constitutionality of the last paragraph of section 188 of the Tax Code (Code Supp. 1928, page 317).

This section, after providing generally for license tax on retail merchants, based upon purchases, further imposed a separate license tax upon those merchants operating a distributing house for goods, wares and merchandise.

With respect to this the court said, in the case last cited, quoting from *McKenney* v. *City Council of Alexandria*, 147 Va. 157, 136 S. E. 588:

"The general rule, so far as classification of business for the purpose of taxation is concerned, is that trades, occupations, professions and privileges may be classified for purposes of license or occupation taxes, and different licenses may be imposed upon the various classes, provided the classification is reasonable. 37 C. J., page 198, section 52, and cases cited, Note 24, including a number of Virginia cases. General classes may be subdivided into particular classes and licensed or taxed."

It was further said in the same case:

"No question of double taxation is involved in this appeal, as it is well settled in this State that the provisions of section 168 of the Constitution, requiring equality and uniformity of taxation, apply only to a direct tax on property and not to license taxes which do not always rest upon a basis of uniformity. *Bradley* v. *Richmond*, 110 Va. 521, 66 S. E. 872, 874; *Pocahontas Consolidated Collieries Co., Inc.* v. *Commonwealth*, 113 Va. 108, 73 S. E. 446."

The case of *State Board of Tax Com'rs of Indiana* v. *Jackson*, 283 U. S. 527, 51 S. Ct. 540, 543, 75 L. Ed. 1248, 73 A. L. R. 1464, involved the constitutionality of an act of the State of Indiana which imposed a license tax on every person, firm or association operating or maintaining one or more stores within the State, under the same general management or ownership. The license fee was graduated from the sum of three dollars upon one store to the sum of twenty-

five dollars upon each in excess of twenty. An intermediate number of stores between one and twenty were subject to a graduated license tax between three dollars and twenty-five dollars.

This scheme was recognized as a chain store tax. The classification was attacked as offensive to the National and State Constitutions because it denied equal protection of the laws, equal privileges and immunities and uniformity and that it was discriminatory, arbitrary and capricious. There was brought into question, either directly or indirectly, most of the defenses urged by the tax-payer, the Sanitary Grocery Company, in this case, and they were all solved in favor of the constitutionality of the statute. The classification was approved and held to be impervious to the onslaught made upon it based on the objections enumerated. We quote some of the pertinent portions of the opinion in that case.

After setting out in detail a number of commercial advantages, economic benefits, and favoring circumstances which were enjoyed by the chain store groups and which differentiated them from the one store owner and operator, the court said:

"The principles which govern the decision of this cause are well settled. The power of taxation is fundamental to the very existence of the government of the States. The restriction that it shall not be so exercised as to deny to any the equal protection of the law does not compel the adoption of an iron rule of equal taxation, nor prevent variety of differences in taxation, or discretion in the selection of subjects or the classification for taxation of properties, businesses, trades, callings, or occupations. *Bell's Gap R. Co.* v. *Pennsylvania,* 134 U. S. 232, 10 S. Ct. 533, 33 L. Ed. 892; *Southwestern Oil Co.* v. *Texas,* 217 U. S. 114, 30 S. Ct. 496, 54 L. Ed. 688; *Brown-Forman Co.* v. *Kentucky,* 217 U. S. 563, 30 S. Ct. 578, 54 L. Ed. 883. The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction, *American Sugar Ref. Co.* v. *Louisiana,* 179 U. S. 89, 21 S. Ct.

43, 45 L. Ed. 102, or if any state of facts reasonably can be conceived to sustain it." The court then said, as it had before said, in the case of *Brown-Forman Co.* v. *Kentucky, supra:* "If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law."

The statute that was there under consideration is not sufficiently different, in legal principle, from the ordinance in the case in hand to justify a diverse conclusion.

In that case the classification was considered neither capricious nor arbitrary. We are of the same mind as to the classification here.

In the *Jackson Case* the United States Supreme Court said further:

"It is not the function of this court in cases like the present to consider the propriety or justness of the tax, to seek for the motives or to criticize the public policy which prompted the adoption of the legislation. Our duty is to sustain the classification adopted by the legislature if there are substantial differences between the occupations separately classified. Such differences need not be great. The past decisions of the court make this abundantly clear."

Our duty seems equally plain with respect to the classification set up by the ordinance in question.

The Supreme Court of the United States in the *Jackson Case,* referred to, cites the *Bradley & Co.* v. *Richmond Case, supra,* as presenting a classification which did not offend the constitutional provision for equal protection of the laws.

There was also cited the case of *Metropolis Theatre Co.* v. *Chicago,* 228 U. S. 61, 33 S. Ct. 441, 57 L. Ed. 730, in which "an ordinance classified theatres for license fees based on and graded according to the admission charged. It was shown that some of the theatres charging a higher admission had less revenue than those charging a smaller price, and therefore paying lower license fees. This court held the classification valid."

It may be well to note the fact that the Sanitary Grocery

Company contends that the federal cases cited by the city are not applicable to the case at bar for the reason that they are based on State statutes rather than municipal ordinances.

This position is without merit, since the two cases last referred to involved classifications made by ordinances of the cities of Richmond and Chicago, respectively, which separated subjects for classification as to which the distinctive differences were much less patent than are those in the case in judgment.

The Grocery Company further urges that the cases referred to presented "*factual* decisions based on proof by the *taxing power* which seemed to justify the court in placing such chains in a different class from the ordinary merchant."

▮▮ Here we again invoke the principles enunciated in the case of *Bradley & Co.* v. *Richmond,* 110 Va. 521, 526, 66 S. E. 872, 874, in which this appears:

"In order to render the classification illegal, the party assailing it must show that the business discriminated against is precisely the same as that included in the class which is alleged to be favored."

The same case, it will be remembered, was before the Supreme Court of the United States.

▮ It was said by that great tribunal:

"Obviously the burden was upon the plaintiff in error to show an illegal and capricious classification." So if the Grocery Company, here, thought that its case might have been strengthened by making it a *factual* one it was up to it to do so. The tax and the classification complained of stood fortified by the presumption of correctness and legality. We perceive nothing that has overcome this.

The Grocery Company further contends that in the federal cases cited by the city the license tax was graduated on all stores, including a tax on the first store in the chain, and this mode of taxation being different from that in the case in judgment, an additional differentiating fact is found, causing the inapplication of those cases to this one as authority. We think in a number of those cases, certainly in the *Bradley & Co.* v. *Richmond Case,* the graduating feature

of the tax was absent. We do not think, however, that that is a matter of important moment.

We understand that the extent and amount of the taxation, whether reached by arranging in grades or degrees, or by a different process, is a matter for the discretion of the lawmakers, in this case, the City Council, in the exercise of the power granted by the State to the city through its charter. It will be observed that the power granted in this case is very wide and extensive—almost plenary.

Speaking of the right of a city to impose a license tax, it was said in the case of *Wiggins Ferry Co.* v. *City of East St. Louis,* 107 U. S. 365, 2 S. Ct. 257, 27 L. Ed. 419, 423: "The power of the State of Illinois to authorize any city within her limits to impose a license tax on trades or callings generally, especially those which are *quasi* public, cannot be disputed."

"A State may impose a license fee either directly or through one of its municipal corporations."

*Fox* v. *Standard Oil Co.,* 294 U. S. 87, 97, 55 S. Ct. 333, 338, 79 L. Ed. 780, 781:

"When the power to tax exists, the extent of the burden is a matter for the discretion of the lawmakers."

The court further said in the case just cited:

"A chain, as we have seen, is a distinctive business species, with its own capacities and functions. Broadly speaking its opportunities and powers become greater with the number of the component links; and the greater they become, the more far-reaching are the consequences, both social and economic. For that reason the State may tax the large chains more heavily than the small ones, and upon a graduated basis, as indeed we have already held. Not only may it do this, but it may make the tax so heavy as to discourage multiplication of the units to an extent believed to be inordinate, and by the incidence of the burden develop other forms of industry. In principle there is no distinction between such an exercise of power and the statute upheld in *Magnano Co.* v. *Hamilton* [292 U. S. 40, 54 S. Ct. 599, 78 L. Ed. 1109] *supra,* whereby sales of butter were fostered and sales of

oleomargarine repressed. A motive to build up through legislation the quality of men may be as creditable in the thought of some as a motive to magnify the quantity of trade. Courts do not choose between such values in adjudging legislative powers. They put the choice aside as beyond their lawful competence. 'Collateral purposes or motives of a legislature in levying a tax of a kind within the reach of its lawful powers are matters beyond the scope of judicial inquiry.' "

We address ourselves now to the contention that the State having already classified merchants generally for the purpose of taxation and such classification being dissimilar to that adopted by the offending ordinance, it is not within the power of a city to classify chain stores as such for such purpose. It is said in substance that the city cannot classify and it cannot reclassify. At the outset let us say that the State has made no classification with respect to chain stores as such. The General Assembly of Virginia has not taken such affirmative action; therefore, the action of the city is not a reclassification.

The city maintains that having been granted the general power of license taxation, which the words of its charter provisions import, its classification in the immediate case does not offend the Federal or State Constitutions and its legality cannot be denied.

In the case of *Fox* v. *Standard Oil Co.*, *supra*, it was said that the chain store "is a distinctive business species, with its own capacities and functions."

The City of Fredericksburg has marked a new way and found a distinct species, hitherto immune from license taxation, as such, in this State, to share the burdens of the expense of its government.

That it has not exceeded its lawful authority is made plain by many decisions of this court.

In *Norfolk* v. *Norfolk Landmark Pub. Co.*, 95 Va. 564, 28 S. E. 959, 960, the court said:

"When the legislature confers upon a municipality the general powers of taxation, it grants all of the power possessed

by itself in respect to the imposition of taxes; and the city can then impose taxes in its discretion upon all subjects within its jurisdiction not withheld from taxation by the legislature whether they be taxed by the State or not."

*City of Norfolk* v. *Griffith-Powell Co.,* 102 Va. 115, 45 S. E. 889, 891:

"If it confers the power of taxation upon a municipal corporation, the power so delegated continues until it is re-called, and the mere failure of the legislature to exercise a part of its power cannot be construed as an impairment or diminution of that which it had lawfully delegated to a subordinate agency of taxation, for the ideas of propriety, expediency and policy which influence all schemes of taxation may not be identical in the municipal councils and the legislature of the State.

"We think it follows from what has been said, that an ordinance, which imposes a tax in a city clothed with power of taxation stands on the same footing with an act of the legislature, and the courts, looking alone at the power to tax, will consider the ordinance without reference to the tax imposed by the legislature. If the legislature could have imposed the tax, but for reasons satisfactory to itself refrained from doing so, that will not invalidate the ordinance in the absence of the expressed or necessarily implied intention to withdraw the subject from taxation, or to require that it shall be taxed only in a particular mode."

In *Ohio Oil Co.* v. *Conway,* 281 U. S. 146, 159, 50 S. Ct. 310, 314, 74 L. Ed. 775:

"The States in the exercise of their taxing power, as with respect to the exercise of other powers, are subject to the re-quirements of the due process and the equal protection clauses of the Fourteenth Amendment, but that Amendment imposes no iron rules of equality, prohibiting the flexibility and variety that are appropriate to schemes of taxation. The State may tax real and personal property in a different manner. It may grant exemptions. The State is not limited to *ad valorem* taxation. It may impose different specific taxes upon different trades and professions and may vary the rates of

excise upon various products. In levying such taxes, the State is not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value. To hold otherwise would be to subject the essential taxing power of the State to an intolerable supervision, hostile to the basic principles of our government and wholly beyond the protection which the general clause of the Fourteenth Amendment was intended to assure."

■ *Billings* v. *Illinois*, 188 U. S. 97, 23 S. Ct. 272, 273, 47 L. Ed. 400:

"The taxing power of a State is one of its most extensive powers. It cannot be exercised upon persons grouped according to their complexions. It can be exercised if they are grouped according to their occupations."

The one mode would be discriminatory, arbitrary, capricious and illusory. The other satisfies the constitutional requirements of equality, uniformity and reasonableness.

The license tax which is assailed is imposed upon all the members of the designated class alike. They all receive precisely the same treatment at the hands of their municipal government.

In addition to the authorities cited we have found exceedingly interesting and informative, the following articles:

Virginia Law Review, volume 17, page 313; Virginia Law Review, volume 19, page 722; Yale Law Journal, volume 44, page 619.

They trace the development of chain store taxation and delineate the cases with much attention.

To deny to a State government, or one of its agencies or divisions, to which it has granted the authority to tax, the power to impose and levy a tax upon trades, callings or occupations, or property, for the purpose of providing revenue for the maintenance and expenses of such government or division or agency, would strike a fatal blow at that attribute of sovereignty which is necessary to governmental existence.

■ It is our thought, as appears throughout this opinion, that there is reasonable ground for the classification in the

case we are considering, that it is based upon real distinction and therefore is not arbitrary and capricious and the classification being proper and legal there is present the requisite uniformity. We think all of the objections urged against the taxation are without substantial merit and we therefore reverse the judgment of the trial court and reinstate the assessment which it set aside.

*Reversed.*