# Wytheville

WILLIAM R. HILL, TRADING, ETC. v. CITY OF RICHMOND.

June 14, 1943.

Record No. 2672.

Present, All the Justices.

The opinion states the case.

*Gordon & Gordon,* for the plaintiff in error.

*Horace H. Edwards* and *Henry R. Miller, Jr.,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

William R. Hill, trading as William R. Hill and Company, made application to the Circuit Court of the city of Richmond for relief from certain alleged erroneous assessments of license taxes as a wholesale merchant for the years 1936, 1937, 1938, 1939 and 1940. The court denied relief and now the case is here for decision.

Hill is a wholesale merchandise broker in the city of Richmond where he has conducted that business since 1914. The business, according to the testimony, consists in buying and selling merchandise and selling merchandise for others on commission. The sales are made to wholesalers.

Prior to 1928, Hill was assessed by the Commissioner of Revenue, under appropriate statutes, with a State license tax as a commission merchant and also as a wholesale merchant. During that time he was likewise assessed, under appropriate ordinances, with a city license tax as a wholesale merchant and also as a commission merchant. Thus for 14 years the State required him to have two licenses and the city also required two licenses.

In 1928, after conferences between the State Tax Commissioner and representatives of certain wholesale merchandise brokers of the State, a new license tax statute was prepared by the State Tax Commissioner, and submitted to and enacted into law by the General Assembly. The old system of classifying this kind of business in two capacities and exacting two different kinds of licenses from the owners of such business throughout the State had become burdensome because the margin of profit was so small. The new statute was intended to embrace the buying and selling by brokers on their own account to wholesalers and manufacturers when their gross profits were measured principally by commission. It was also intended by the new statute to create a new classification to be known as "Wholesale Merchandise Brokers". This statute is now known as section 171a of the Tax Code. (Acts of 1928, p. 1112, amended 1942, chapter 182, but the amendment has no bearing on the case at bar.)

After 1928 and until the present time, Hill has been assessed by the Commissioner of the Revenue under section 171a of the Tax Code with a State license tax as a wholesale merchandise broker. He has not been required since 1928 to have a State license as a wholesale merchant.

After 1928, the city of Richmond exacted only one license tax of Hill. It was for the privilege of conducting the business of merchandise broker or commission merchant. (See Code of city of Richmond, sections 72 and 86.) The former requirement of a wholesale merchant's license tax, which had been exacted of Hill prior to 1928, was abandoned and for 12 years afterward he was required by the city to have only the one license. Both the city and the State licenses were issued simultaneously by the same office of the Commissioner of the Revenue.

In 1933, city ordinance (now section 86) was amended and new and broader language added.

In 1940, the city of Richmond, through the Commissioner of the Revenue, had retroactive city license taxes assessed against Hill for the years 1936, 1937, 1938, 1939, and 1940 as a wholesale merchant, thereby reverting to the old method of assessment which existed prior to 1928. The Commissioner of the Revenue attempted at the same time to assess Hill with a retroactive State license as a wholesale merchant for the same years but upon direction from the State Tax Commissioner that such an assessment would be improper it was not made.

Hill then filed the present petition for relief from the alleged erroneous assessments with the result that the court sustained the assessments for all of the years except 1936, which was barred by the statute of limitations.

Hill's position is that inasmuch as the State, in 1928, created a new license tax classification (section 171a) in which wholesale merchandise brokers were placed and under which he has been taxed since that time, the city is bound by that classification, and, if it desires to impose a city license tax for that business, it must either enact an ordin-

ance expressly adopting the State's classification or classify the business under an appropriate existing ordinance, which, in legal effect, is equivalent to the State statute; that section 86 of the City Tax Code is the nearest approximation to the State statute and Hill, having been taxed under section 86 for city purposes as a wholesale merchandise broker since 1928, and he having paid the tax thereby required, he cannot now be required to pay another city license tax as a wholesale merchant under section 121 of the City Tax Code.

Hill also contends that the city, having classified and assessed him for the past twelve years as a merchandise broker or commission merchant, and he having paid a license tax as such, the city is bound by the principles of practical construction and, therefore, the retroactive assessment as a wholesale merchant made under City Tax Code, section 121, is not valid.

The city contends that Hill buys and sells merchandise in his own right and as to this business he is a wholesale merchant and should be assessed as such under section 121 of the City Tax Code; and that, as he sells merchandise for others on a commission, as to this business, he should be taxed as a commission merchant or broker under section 86 of that Code.

After 1928, the city enacted what is now known as section 86. New language was used broadening the definition of a commission merchant or merchandise broker. It now reads as follows:

"COMMISSION MERCHANTS.—Persons, firms, or corporations who receive or distribute food products, cotton, flour, hay, grain provisions, dry goods, merchandise or other commodities shipped to such person, firm or corporation for distribution on account of the shipper, or who participate in the profits ensuing from or accruing out of the sale of such commodities, or who invoice such sales or collect money therefor; and every person, firm or corporation buying or selling for another any kind of merchandise or commodities, on commission, except associations or organizations of farmers,

and produce exchanges organized and maintained by farmers for mutual help in the marketing of their produce and not for profit; and any person, firm or corporation who sells any personal property which may be left with or consigned to him for sale on commission—$50.00, and $2.50 per $1,000.00 on all gross earnings, receipts or commissions for the preceding license year in excess of $1,000.00. Not prorated."

In 1928, as previously noted, the new State classification known as "Wholesale Merchandise Brokers" was created by the General Assembly (Tax Code, section 171a). The statute defines a wholesale merchandise broker and fixes the license tax in this language:

"Every wholesale merchandise broker dealing in food products and other commodities, who sells only to wholesalers or manufacturers, and whose gross profits are measured principally by commissions, shall annually pay for the privilege of doing such business a license tax of fifty dollars, provided the gross commissions and gross profits of such wholesale merchandise broker for the preceding year did not exceed one thousand dollars; but when the gross commissions and gross profits exceeded one thousand dollars, the tax shall be fifty dollars, and an additional tax at the rate of one dollar on each one hundred dollars, or fraction thereof, of gross commissions and gross profits in excess of one thousand dollars. The license tax on every such wholesale merchandise broker beginning business shall be the flat tax above prescribed, plus a tax in accordance with the foregoing scale measured by the gross commissions and gross profits which it is estimated he will receive from the time he commences business to the following December thirty-first. The license taxes prescribed by this section shall be in lieu of a tax on the capital actually used or employed by every such wholesale merchandise broker in the business described in this section. The word 'capital,' as herein used, shall be construed to mean the capital which, but for this section, would be taxable for State purposes under the laws of this State. This section shall apply to persons, firms and cor-

porations. This section shall be in force on and after the first day of January, nineteen hundred and twenty-nine."

Section 176 of the City Tax Code provides that where a person, firm or corporation is engaged in more than one trade, business or profession, he or it must pay a license tax on each.

■ The classification of the business of wholesale merchandise brokers by the State in 1928 was binding upon the city of Richmond.

■ ■ The business, commonly known as a wholesale merchandise broker, is a distinctive one, possessing certain well defined traits or characteristics. Included in the business is selling merchandise on commission and buying and selling on the broker's own account. In order for the broker to qualify under section 171a of the State Tax Code, he must sell only to wholesalers or manufacturers, and his "gross profits" must be principally measured by commissions. "Gross profits" and "gross commissions" are emphasized in the statute indicating clearly that it is contemplated that "profits" as distinguished from "commissions" will be made. This, in turn, indicates that the broker will buy and sell on his own account. If this were not true, he could never make a "gross profit" and the use of those words would have no meaning.

■ While the language of section 86 of the City Tax Code is different from that employed in section 171a of the State Tax Code, yet in section 86, in order to qualify as a merchandise broker or commission merchant, just as is permitted in section 171a, merchandise may be bought and sold on the broker's own account. This language, used in section 86, "who participate in the profits ensuing from or accruing out of the sale of such commodities," clearly implies buying and selling for profit. In addition, merchandise may be sold for another on commission.

■ The principal differences between section 86 and section 171a is that in section 86 the merchandise need not be sold to wholesalers or manufacturers, and the gross profits

need not be measured principally by commissions as is required by section 171a. The terms of section 171a are stricter than those of section 86. However the city, with knowledge of the business of Hill, in 1928, elected to classify his business under the old section relating to commission merchants and brokers, and from 1933, under section 86, in preference to enacting a new ordinance paralleling the State statute, and for twelve years, exacted a license tax of him under those sections, which he paid. It cannot now take the position that Hill's business should also be classified as a wholesale merchant and as such required to pay a license for that additional business.

The evidence conclusively shows that Hill competed only with other wholesale merchandise brokers and that he did not compete with wholesale merchants.

But the city contends that until 1940, when a field audit was made of Hill's business, it had no knowledge that he bought and sold on his own account. Counsel for Hill have satisfactorily answered this contention by pointing to Hill's testimony, in which he stated that he told the Commissioner of the Revenue, who made the assessment, the nature of his business, and to the additional significant fact that the city exacted a wholesale merchant's license of him from 1914 to 1928, and, therefore, it could not have assessed him as a wholesale merchant for fourteen years without knowing he bought and sold merchandise on his own account. Certainly if the city had this knowledge for fourteen years prior to 1928, it was bound to have had the same knowledge for the twelve years afterwards because there was no change in Hill's business.

The Commissioner of the Revenue, who made both the State and city assessments and issued the licenses for each year simultaneously, wrote on the State licenses for several of the years these words: "Section 171a Wholesale Merchandise Brokers" which clearly and conclusively indicated that the commissioner knew of the State classification. He had knowledge that Hill could not be classified for State

purposes as a wholesale merchant. He could not possess this knowledge when issuing the State license and be ignorant of it when issuing the city license. The inevitable conclusion is that the commissioner knew he could not assess Hill as a wholesale merchant because his classification would not permit it.

If he was engaged in a wholesale merchant's business before 1928, he was engaged in the same business afterwards. Without any change in the character of his business, which fact was known to the city, the only reasonable conclusion to be drawn from the action of the city in discontinuing the assessment against him as a wholesaler and in classifying him under section 86 of the City code, which required only a merchandise broker's or commission merchant's license, is that the city recognized the new State classification embraced in section 171a, and, not having a parallel ordinance at the time (1928) under which to place the new State classification, used the one most similar to section 171a and placed him under it. In that manner the city adopted the classification which had been created by the State in 1928. The conduct of the city can be explained in no other reasonable way.

We do not mean that the city may not classify subjects for taxation. It has that power, especially where a subject of taxation has not been classified by the State. But where the State has made its own classification of a business that is as generally well known as that of "Wholesome Merchandise Broker," the city is bound to follow the State, if it desires to require a license for that particular business. It certainly cannot split the business into two parts as attempted here, and tax each part separately. It has no power to require one tax on that portion of the brokerage business which includes buying and selling on the broker's own account and require another tax on that part of his business which is devoted to selling on commission.

In 38 Am. Jur., Municipal Corporations, par. 345, the general rule is stated: "In the majority of cases where the

question of the power of a municipality to classify for purposes of taxation as affected by classification made by the state has arisen, it has been held that such power was not present. Such decisions take the position that where a state has classified for purposes of taxation, a municipality is without power to make other classifications, or to subdivide the classes defined by the state, in providing for a municipal tax. Where a municipality is empowered by its charter to raise taxes in accordance with the Constitution and laws of the state and of the United States, it does not have power to divide a single taxable privilege as classified and defined by the state law into several businesses so as to require several separate municipal licenses for each element, all of which accrue under the one state license. The effect of allowing municipalities to enact ordinances classifying and denying occupations for purposes of municipal taxation different from the classification made by state laws on the subject would be oppressive, and would have the effect of allowing the auxiliary government, established for the more efficient administration of justice, without any inherent powers to make laws or adopt regulations of government, to make laws and adopt regulations in conflict with those of the state, its creator. This conflict would destroy the uniformity of the operation of the tax laws of the municipality as compared with those of the state in respect to the persons upon whom they are operative. * * * "

That authority in the same paragraph concludes that a municipality has power to classify for the purpose of taxation, including license taxes, where no classification for such purposes has been made by the State. A comprehensive annotation on the subject referring to the decided cases may be found in 110 A. L. R. at page 1204.

Virginia has followed the general rule. See *Norfolk* v. *Griffin Bros.*, 120 Va. 524, 91 S. E. 640. There, the State had classified and defined contractors for state taxing purposes and had accordingly assessed a license tax which was paid. The city of Norfolk, by ordinance, instead of follow-

ing the State classification, separated the component parts of the business of a contractor and required a license tax of each. The single question involved in that case was whether the city of Norfolk had the power to divide a single taxable privilege, the business of a contractor, as defined and classified for the purpose of State taxation, into several occupations, which are included in the business of a contractor, and require a license tax on each. This court expressly held that the city had no such power and that the classification made by the State was binding upon the city.

The case at bar is controlled by the principles announced in the case of *Norfolk* v. *Griffin Bros., supra.*

The city of Richmond had no power to divide the business or to create a new classification for city taxing purposes different from that already defined by the State. The city, having required a license tax of Hill for twelve years after 1928, will not be presumed to have required it without the sanction or authority of some ordinance and the only ordinance that approximates the State classification, statute 171a, is section 86 of the City Tax Code. The city, by its conduct and practice, has committed itself to that section as the proper one under which to apply the tax and cannot now exact a license under a different ordinance for the privilege of doing a business which is already embraced in section 86 under which Hill has long been taxed.

The city contends that Hill is conducting two separate and distinct businesses, one as a wholesale merchant and the other as a merchandise broker and, therefore, under the authority of section 176 he should be assessed in both capacities. This contention ignores the fact that the State through its classification and definition of "Wholesale Merchandise Brokers" has authorized Hill to conduct both businesses under the one State license, for under section 171a of the State Tax Code, he is expressly permitted to buy and sell on his own account and also to sell on commission. It would surely be illegal for the State to require another license of him because he buys and sells on his own account,

if he sells only to wholesalers and manufacturers and if his gross profits are measured principally by commissions. Furthermore, the State, through its proper representative, with full knowledge of the character of the business conducted by Hill, disclaims any right or power to tax him other than a wholesale merchandise broker under section 171a. When the attention of this representative of the State was called to the present position of the city and of its attempt to exact a wholesaler's license of the taxpayer, the State representative instructed the Commissioner of the Revenue, that no such additional State license should be required for the operation of the business of Hill. We certainly will not assume that the State taxing department would fail or overlook a subject of taxation. This department is noted for its efforts in gathering in all taxes.

The city also contends that Hill's business does not meet the requirements of section 171a of the State Tax Code in two respects: First, that his sales are not confined to wholesalers and manufacturers, and, second, that his gross profits are not principally measured by commissions.

It is charged that Hill sells to the Great Atlantic and Pacific Tea Company and The Spotless Company, and they are engaged in the retail business. It is true they operate many retail stores, but the city of Richmond has required of them a license as wholesale merchants. It is undisputed that, for the purpose of meeting the requirement of section 171a, sales must be to wholesalers. The trade, generally, for that purpose, recognizes those companies as wholesalers, and in selling to them Hill competes with other wholesale merchandise brokers and not with wholesale merchants. The city recognizes those concerns as wholesale merchants when on a quest for taxes, and classifies them as such in order to grant them wholesale merchants' licenses. If they are not wholesalers, the city should not license them as such. It is charged that sales were made to other retailers but it is clear from the records, if those sales were made they were not substantial. They may be charac-

terized as *de minimis*. Our conclusion is that Hill's sales were made to wholesalers.

It is charged that the gross profits of the business were not measured principally by commissions and for that reason Hill could not qualify under State section 171a. The testimony of Hill unequivocally shows that his gross profits were measured principally by commissions; that his business was in competition with other wholesale merchandise brokers, whose commissions were likewise so measured; and that if he had varied in this practice and had tried to get a profit larger than one measured principally by a broker's commission, competition would prevent the making of sales.

The language, "whose gross profits are measured principally by commissions," is very indefinite. "Gross profits" means the excess of price received over the price paid for goods before deductions are made for the cost of operation.

"Commissions" are the allowances to an agent or factor for transacting business for another. Almost any business transaction of a broker might produce a profit that may be measured principally by a commission. He might buy goods on his own account, add the ordinary broker's commission and sell. In that case his profits would be exactly measured by commissions. Or, on another occasion, he might buy goods, add a profit in excess of the ordinary broker's commission and sell, in which event his profits on that transaction would exceed his ordinary commission, and yet his gross profits over the year could still be measured by commissions. The statute does not define the word "commission". We do not know whether it refers to the usual broker's commission or to other commissions. We know that "profit" is not "commission". The only reasonable construction of the language is that most of the profits over the year are to be measured by commissions.

It is testified by Hill and not contradicted that he operates his business like other wholesale merchandise brokers, and that the close competition with others in similar

businesses requires him to operate upon a small margin of profit which, if spread over the year, would amount to no more than a regular broker's commissions. In any event it must be remembered that he was licensed under section 86 of the City Tax Code, which as we have seen, is more liberal in its terms than section 171a. It does not require a merchandise broker to sell only to wholesalers and it does not require his profits to be measured principally by commissions. The city has no right to complain if Hill does not meet the requirements of the State. The city necessarily is interested only in Hill's meeting the requirements of the city as disclosed in section 86.

In the beginning there might have been reasonable doubt whether a wholesale merchandise broker, as defined and classified by the State, was taxable under section 86 of the City Tax Code because of the variance between it and the State statute; but when the city placed Hill's business under section 86, with his acquiescence and approval, and when the city amended and broadened section 86 and still continued for years to assess him under it, with his approval, the practical construction adopted by the taxing officers is applicable and binding on the city. *Richmond Food Stores v. Richmond*, 177 Va. 592, 15 S. E. (2d) 328. This court in that case, speaking through Mr. Chief Justice Campbell, used the following language which is apt here: "Where taxes have been imposed and collected for a period of several years, with full acquiescence upon the part of the taxing power, we see no reason to penalize the taxpayer who has done all in his power to enable him to honestly discharge his duty, on the sole ground that a mistake has been made in his classification."

The judgment is reversed and the prayer of the petition of Hill is granted. This court will enter judgment here relieving him of the erroneous assessments for the years 1937, 1938, 1939, and 1940.

*Reversed.*