ALFRED E. COX *v.* 555, INC

5-6080                              489 S.W. 2d 14

Opinion Delivered January 8, 1973

*Patten, Brown & Leslie,* for appellant.

*Glenn F. Walther,* for appellee.

J. FRED JONES, Justice. This is an appeal by Alfred E. Cox from a decree of the Pulaski County Chancery Court dismissing a complaint filed by Cox against 555, Inc. for commissions alleged to be due and owing on an employment contract and in awarding judgment against Cox on open account for $218.16 as prayed in counterclaim filed by 555, Inc.

Mr. Cox alleged in his complaint that he was employed by 555 as a salesman from April, 1960, to January, 1970, under an agreement whereby he was to sell at wholesale prices, as set by 555, certain items of merchandise, and would receive as pay for his services and expenses 20% of the difference between the cost of such merchandise to 555 and the sale price received by 555 from its customers. Mr. Cox alleged that in January, 1970, a modification of the original employment contract was refused by him and that when he refused to agree that 2% for financing and 3% for advertising were properly chargeable as a part of the cost of the merchandise in computing the difference between costs and sales for the purpose of figuring commissions, his employment was terminated by 555. He alleged that upon the termination of his employment on December 15, 1970, he learned for the first time that 3% of cost was set aside for advertising and 2% of cost was set aside for financing, and that these amounts were wrongfully added to the cost of the merchandise in computing the gross profits upon which his commissions were paid. He alleged that during the course of his employment 555 had concealed the true cost of the appliances sold by its commission salesmen, including himself, and had thus fraudulently concealed the true amount of commissions due him. He alleged that unpaid commissions due him under the nine year period of his employment, would amount to approximately $31,000. He prayed for an accounting and for the appointment of a master to correctly compute

the amount of gross profits on the sales made by him and upon which commissions should be paid to him, and he prayed judgment for all sums correctly due him.

555 answered by general denial and filed a counter-claim for $736.22 as alleged overpayment of advancement draws which were to be deducted from commissions due Mr. Cox. 555 also counterclaimed for $218.60 for merchandise allegedly purchased by Mr. Cox on open account.

After trial on the merits the chancellor dismissed Mr. Cox's complaint for want of equity. He dismissed 555's counterclaim for $736.22 in overpayment of commissions and awarded a judgment in favor of 555 for the sum of $218.60 on its counterclaim for merchandise purchased by Mr. Cox.

Mr. Cox has designated the following points he relies on for reversal:

"The Trial Court Erred in Holding that the Contract for Compensation was at the Rate of 20% of Gross Profits as Computed by Appellee Rather than 20% of Gross Profits.

The Trial Court Erred in Holding that the Customary Meaning of the Words 'Gross Profit' could not be Considered as Evidence, and that Whatever the Company Considered Gross Profits to Mean is the Contract.

The Lower Court's Apparent Holding that Appellee Could Add In Any Cost Item to the Cost Before Figuring Gross Profits is Error."

The question in this case actually boils down to what constitutes "gross profits" upon which Mr. Cox was entitled to be paid a commission of 20%. Mr. Cox contends that it was his understanding the "gross profits" upon which he was to be paid a commission of 20% was to be the difference between the selling price and the cost of the merchandise laid down in the warehouse of 555, including freight to the warehouse.

555 contends that all the salesmen, including Mr. Cox, understood that the gross profit upon which the salesmen's commissions were to be paid was determined by adding the cost of freight as well as other items including finance charges and advertising to the cost price which 555 paid to the factory, and the difference between the total of these cost items and the amount for which the items were sold to the retail customers of 555, constituted the gross profit of which the commissions were to be figured.

We shall not detail the testimony here, but Mr. Cox testified that he understood throughout the nine years he worked as a salesman for 555 that on all items of merchandise sold by him he was to receive 20% of the difference between the cost of the merchandise delivered to the warehouse of 555 and the amount for which it was sold to the 555 customers. He testified that he did not know that co-op advertising or finance charges were being added to the factory cost of the merchandise before deducting the cost from the final sale price for the purpose of figuring the commissions due him until just recently. He testified that he knew such charges had been made for a time but it was his understanding that they had been discontinued after the salesmen complained about the procedure. He testified that he complained about his monthly statements from time to time, and that he suspected all along that something other than freight and factory costs was being added to the cost of the goods before figuring the commissions, but that he did not know what the items were. Mr. Cox's overall testimony is simply to the effect that he knew there was considerable operational expense in carrying on the wholesale business by 555, such as advertising, financing, floor planning, rent, etc., but that he did not know any of these items were being added to the factory cost of the merchandise before figuring his 20% commission on the final sales price.

The testimony on behalf of 555 was in support of its contention that the term "gross profit" meant the difference between the factory cost plus some of the business expense subtracted from the final sale price. According to the testimony of Mr. Huffsmith and other witnesses for 555, the items of expense which were added as a part of the cost to 555 varied from time to time as conditions changed, but

all salesman were thoroughly familiar with, and were kept constantly advised as to, what items were carried as cost against profits in the figuring of "gross profits." The witnesses for 555 testified that the reason for variation in arriving at gross profits, was because some customers paid cash immediately, whereas other customers were financed on floor plans and were extended credit. They testified that it was necessary to take an actual loss on some items of merchandise and make up for the loss in added profits on other items, and that all of this was thoroughly discussed with the salesmen at regular monthly sales meetings. The witnesses for 555 testified that each salesman, including Mr. Cox, was furnished each month with a wholesale analysis and commission sheet showing the number and amount of sales of various items of merchandise and the gross profits derived therefrom upon which the salesmen's commissions were figured. These sheets for the various months during Mr. Cox's employment were offered in evidence and most of them show various items of expense deducted as a part of the cost of sales before figuring the gross profits.

As we view the overall evidence in this case, the question comes down to whether the chancellor's finding was against the preponderance of the evidence and we conclude that it was not.

We are not unmindful that courts in other states have held that the term "gross profit" has a clear and precise legal meaning and has been defined as "the excess of the selling price over the cost price without deducting the expenses of resale and other costs of doing business." *(J. R. Gray Co.* v. *Jacobs,* 362 S. W. 2d 167 [Texas 1962]). See also *Hill* v. *City of Richmond,* 26 S. E. 2d 48 (Va. 1943). In the case at bar, however, we are of the opinion that Mr. Cox knew that other items in addition to freight were being charged to cost for the purpose of determining "gross profits," and that the exact nature of the items as well as the amount therefor was either known or available to him. We conclude, therefore, that after having accepted the commissions paid him over the nine year period of his employment and only complaining to his employer from time to time about the *amount* of his commissions, he is now estopped

from contending that he has been defrauded out of commissions due him and entitled to an accounting therefor.

The decree is affirmed.