COX CABLE HAMPTON ROADS, INC., ET AL.

V.

CITY OF NORFOLK

Record No. 910207

November 8, 1991

Present: All the Justices

*Robert D. Seabolt (James C. Roberts; Wayne Lustig; Timothy J. O'Rourke; Maria L. Olsen; Mays & Valentine; Dow, Lohnes & Albertson*, on briefs), for appellants.

*M. Wayne Ringer (Jack E. Greer; Philip R. Trapani, City Attorney; Daniel R. Hagemeister; Williams, Kelly & Greer*, on brief), for appellee.

JUSTICE HASSELL delivered the opinion of the Court.

In this appeal, we consider certain challenges to the City of Norfolk's taxing power, as well as the constitutionality of the tax imposed.

Cox Cable Hampton Roads, Inc. filed this suit for injunctive, declaratory, and other relief against the City of Norfolk. Cox Cable sought a declaration that an ordinance enacted by the City which permits it to impose a utility tax on cable television service is invalid. John Patrick Teixeira and William Robert Wilson, subscribers of cable television service provided by Cox Cable, filed a separate bill of complaint in which they sought injunctive relief and a declaration that the ordinance is invalid. The City filed demurrers to both bills, and the trial court consolidated the proceedings.[1]

Cox Cable alleged that: the City lacked the legislative authority to impose a tax upon the purchase of cable television service; the ordinance which imposed the tax abridged Cox Cable's rights guaranteed by the First Amendment of the United States Constitution; and the tax infringed upon Cox Cable's rights guaranteed by the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.[2]

The trial court granted the City's demurrer to Cox Cable's Equal Protection claim. Cox Cable's claims that the City lacked the power to enact the tax and that the tax abridged Cox Cable's First Amendment rights were tried by the court.

---

[1] Cox Cable, Teixeira, and Wilson asserted identical claims in their respective bills. Therefore, we will refer to these complainants collectively as Cox Cable.

[2] Complainants also asserted other claims which are not before this Court on appeal.

We shall recite the facts in accordance with well-established principles that a demurrer admits the truth of all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from alleged facts. *Palumbo* v. *Bennett*, 242 Va. 248, 249, 409 S.E.2d 152, 152 (1991). On demurrer, a court may also examine exhibits which are filed with the pleadings. *Flippo* v. *F & L Land Company*, 241 Va. 15, 17, 400 S.E.2d 156, 156 (1991). Furthermore, we will, when necessary, discuss those facts, which relate to Cox Cable's First Amendment claims, which were adduced during the trial.

Cox Cable executed a franchise agreement with the City. The Norfolk City Council approved the franchise agreement by the enactment of an ordinance on July 25, 1989. The franchise agreement, which is a part of the pleadings, is for a term of 15 years. Cox Cable is required to provide cable television service to anyone in Norfolk who requests and pays for such service. On May 22, 1990, the Norfolk City Council enacted an ordinance which permitted the City to establish a utility tax base and utility tax rate for cable television service at a rate of seven percent of a consumer's total bill, excluding certain charges.

## I.

Cox Cable argues that Norfolk lacks authority from the Virginia General Assembly to impose a utility tax on consumers of cable television service. The City, however, argues that § 2(1) of its Charter is a general grant of taxing authority and authorizes the City to impose a tax on television cable service.

Section 2(1) of the Norfolk City Charter states, in part:

In addition to the powers mentioned in the preceding section the said city shall have power:
(1) To raise annually by taxes and assessments in said city such sums of money as the council hereinafter provided for shall deem necessary for the purposes of said city, and in such manner as said council shall deem expedient, in accordance with the Constitution and laws of this state and of the United States; provided, however, that it shall impose no tax on the bonds of said city.

This Court has on numerous occasions construed language virtually identical to the language contained in the Norfolk City

Charter and, on each occasion, we have held that the General Assembly conferred upon the municipality the general power of taxation. For example, in *Norfolk v. Norfolk Landmark Pub. Co.*, 95 Va. 564, 28 S.E. 959 (1898), we considered whether the City of Norfolk's Charter authorized it to impose a license tax. The Charter contained the following provision:

> For execution of their powers and duties, the city council shall raise, annually, by taxes and assessments, in said city, such sums of money as they shall deem necessary to defray the expenses of the same, and in such manner as they shall deem expedient, in accordance with the constitution and laws of this State and of the United States; provided, however, that they shall impose no tax upon the bonds of said city.

*Id.* at 566-67, 28 S.E. at 960. We held that this language conferred upon the City the general power of taxation.

> When the legislature confers upon a municipality the general power of taxation, it grants all the power possessed by itself in respect to the imposition of taxes; and the city can then impose taxes, in its discretion, upon all subjects within its jurisdiction not withheld from taxation by the legislature, whether they be taxed by the State or not.

*Id.* at 567, 28 S.E. at 960.

In *Fallon Florist v. City of Roanoke*, 190 Va. 564, 58 S.E.2d 316 (1950), we also considered language contained in the Roanoke City Charter which is identical to the language found in the Norfolk City Charter, and we held that such language conferred upon the City of Roanoke the general power of taxation. *Fallon Florist v. City of Roanoke*, 190 Va. at 577, 58 S.E.2d at 322. *See also Fredericksburg v. Sanitary Grocery Co.*, 168 Va. 57, 68-69, 190 S.E. 318, 323 (1937). We find no reason to depart from our established precedent. Accordingly, we hold that § 2(1) of the Norfolk City Charter confers upon the City the general power of taxation, which includes the power to impose a tax on cable television service.[3]

---

[3] The City argues that § 2(b) of the Norfolk City Charter, which authorizes the City to levy and collect consumer utility service taxes, also authorizes a tax on cable television

## II.

In its bill of complaint, Cox alleged that its First Amendment rights were violated because the "[o]rdinance singles out cable television for a burden not imposed upon other communications media," and there was no compelling governmental interest to justify this burden which "violated Cox Cable's right to freedom of speech." The trial court rejected this argument, stating that the tax did not "single out Cox Cable for special treatment" but was applied to all public utilities, including telephone, electric, water, gas, and cable service. Relying upon *Minneapolis Star* v. *Minnesota Comm'r of Revenue*, 460 U.S. 575 (1983), and *Arkansas Writers Project, Inc.* v. *Ragland*, 481 U.S. 221 (1987), the trial court held that the government does not contravene First Amendment rights by subjecting the press to economic regulation which is generally applicable to all businesses.

The principles upon which the trial court relied were discussed by the United States Supreme Court in a case decided after the trial court's decision. The Supreme Court in *Leathers* v. *Medlock*, ＿＿ U.S. ＿＿, 111 S.Ct. 1438 (1991) specifically addressed the issue whether the "First Amendment prevents a State from imposing its sales tax on only selected segments of the media." *Id.*, ＿＿ U.S. at ＿＿, 111 S.Ct. at 1442. In *Leathers*, cable operators contended that the Arkansas sales taxation of cable television services and exemption or exclusion of the tax on newspapers, magazines, and satellite broadcast services violated their First Amendment rights.

The Supreme Court stated that "taxation of First Amendment speakers is constitutionally suspect when it threatens to suppress the expression of particular ideas or viewpoints." *Id.*, ＿＿ U.S. at ＿＿, 111 S.Ct. at 1443. The Court identified three circumstances where this threat exists and can be justified only by a compelling governmental interest: (1) when the tax applies only to the press, as the taxes based on circulation or use of paper and ink in publication production at issue in *Grosjean* v. *American Press Co.*, 297 U.S. 233 (1936) and *Minneapolis Star*, respectively, in contrast to a general sales tax as in *Ragland* and *Leathers*; (2) when the tax targets a small group of First Amendment speakers as in *Minneapolis Star* which applied only to the thirteen publish-

service. In view of our holding that § 2(1) of the Norfolk City Charter permits the City to tax cable television service, we do not consider this issue.

ers of the state's 374 paid circulation newspapers, or to the "few Arkansas magazines" which were not religious, sport, trade or professional magazines in *Ragland*; and (3) when the taxation is based on content as in *Ragland*. *Leathers*, ____ U.S. at ____, 111 S.Ct. at 1442-43. All of these circumstances impact a "limited range of views" and risk the "distort[ion of] the market for ideas." *Id*., ____ U.S. at ____, 111 S.Ct. at 1444.

■ The Supreme Court held that none of these circumstances were applicable to the sales tax at issue in *Leathers*. The tax did not apply only to the press but was a tax of general application. It did not target a small group of First Amendment speakers because it applied uniformly to all cable systems in the state, totaling approximately 100. While acknowledging that the provision of television service through the use of satellite communications was not subject to the sales tax, the application of the tax to 100 cable companies "hardly resembles a 'penalty for a few.'" Finally, the Arkansas tax was not based on content. *Id*., (citing *Minneapolis Star*, 460 U.S. at 592).

■ In considering whether there was "an additional basis," for holding that the sales tax violated the First Amendment, the Supreme Court specifically rejected the contention that taxing cable television while exempting satellite television service constituted "intermedia and intramedia discrimination" and violated the First Amendment.[4] *Leathers*, ____ U.S. at ____, 111 S.Ct. at 1445.

Thus, *Leathers*, while rejecting different tax treatment of two classes of First Amendment speakers, *e.g*., newspapers and magazines, or satellite and cable, as a First Amendment violation *per se*, reaffirmed the basic principle that taxation of a small group of First Amendment speakers gives rise to the suspicion that the tax was intended to interfere with First Amendment rights. *Id*., ____ U.S. at ____, 111 S.Ct. at 1444. Nevertheless, the Court held that taxation of 100 cable companies dispelled any such suspicions. *Id*., ____ U.S. at ____, 111 S.Ct. at 1445.

Cox attempts to distinguish *Leathers* by arguing that the Norfolk tax is not analogous to the Arkansas sales tax. It is not a statewide tax applying to 100 cable companies; rather, Cox asserts it is a local tax which can apply to only one company — Cox

---

[4] The Court left for consideration on remand petitioner's contention that the taxing distinction between cable and other media constituted an Equal Protection violation because the Arkansas Supreme Court's decision was based solely on the First Amendment.

Cable. Therefore, Cox asserts, it is suspect and can be justified only by a compelling governmental interest.

■ This argument ignores the fact that the taxing ordinance, like the Arkansas sales tax, applies to all cable companies that might operate in the City. Cox Cable's franchise is not exclusive and does not apply to areas annexed to the City in which other cable television businesses may provide cable services.

■ To accept Cox's position would virtually eliminate the ability of local governments to raise operating revenues through general taxation ordinances whenever there happened to be a single, or only a few, enterprises engaging in First Amendment activities. If, for example, a city had a single magazine, subjecting the sales of magazines to a sales tax would, under Cox's rationale, violate the First Amendment. In contrast, no such violation would exist if the state applied a sales tax to all magazines because a greater number existed statewide. The number of First Amendment speakers affected is not, in our opinion, the test established in *Leathers*. To be constitutionally suspect, the taxation scheme must be "structured so as to raise suspicion that it was intended to [interfere with First Amendment activities]." *Id.*, ＿＿ U.S. at ＿＿, 111 S.Ct. at 1444. The Norfolk taxing ordinance is not so structured. As in *Leathers*, it "is not a tax structure that resembles a penalty for particular speakers or particular ideas." *Id.*, ＿＿ U.S. at ＿＿, 111 S.Ct. at 1445. It is a tax of general applicability, does not target a small group of First Amendment speakers, and is not content based.

■ Therefore, we hold that the tax at issue does not violate Cox's rights under the First Amendment to the United States Constitution or Article I, Section 12 of the Virginia Constitution.

### III.

Finally, Cox Cable argues that the trial court erred because it granted the City's demurrer to Cox Cable's Equal Protection claim. We agree.

Cox Cable, in support of its Equal Protection claim, plead the following:

> On information and belief, SMATV systems serve a significant number of hotels in the City. Such systems employ a central dish antenna that receives television signals from a satellite in fixed orbit. Satellite dish antennas may be located

at the building site, or signals may be received by microwave through small receiving antennas on top of the building. The signal is thereafter distributed by wire to individual viewers.

The utility tax imposed by the Ordinance applies to Cox Cable and its subscribers but not to SMATV operators or those receiving SMATV programming. However, the television programming provided by SMATV Systems operating in the City is virtually identical to that provided by Cox Cable to its subscribers—movies, sports, news, and entertainment.

There is no compelling governmental interest to support taxing of cable television services while exempting SMATV.

The City filed a demurrer to Cox Cable's Equal Protection claim on the basis that SMATV is a form of cable television service and, therefore, the ordinance imposed a tax upon both Cox Cable and Satellite Master Antenna Television Systems (SMATV).

In *Portsmouth* v. *Citizens Trust*, 216 Va. 695, 222 S.E.2d 532 (1976), we discussed the relevant principles which must be applied when undertaking an Equal Protection analysis:

> Recognizing that the states possess broad power to classify . . . for purposes of taxation, the Supreme Court has held that equal protection does not compel identity of treatment but 'only requires that the classification rest on real and not feigned differences, that the distinction have some relevance to the purpose for which the classification is made, and that the different treatments be not so disparate, relative to the difference in classification, as to be wholly arbitrary.' *Walters* v. *City of St. Louis, Mo.*, 347 U.S. 231, 237 (1954).

*Id.* at 698, 222 S.E.2d at 534.

Applying these principles, along with our established rule that the purpose of a demurrer is to test the legal sufficiency of the pleadings, we hold that the trial court erred when it granted the City's demurrer. Cox Cable alleged that SMATV and cable television services are virtually identical; that the City imposes a tax on cable television but does not tax SMATV, and, thus, the tax ordinance creates a classification which does not rest on real differences; that the distinction does not have relevance to the purpose for which the classification is made; and that the different

treatments are arbitrary. Cox Cable is entitled to a trial on the merits so that it can have an opportunity to prove its allegations.

Accordingly, that portion of the trial court's judgment which sustains the demurrer to Cox Cable's Equal Protection claim will be reversed and remanded for further proceedings. We will affirm all other portions of the judgment of the trial court.

*Affirmed in part,*
*reversed in part,*
*and remanded.*