A98A0576. RICKETSON et al. v. BANKERS FIRST SAVINGS BANK, FSB et al.
(503 SE2d 297)

BEASLEY, Judge.

This case presents the question of whether a certain right of first refusal to buy property was a personal covenant (contract) or a covenant running with the land (servitude). The Ricketsons appeal the bench trial decision that the covenant was personal as to the original parties and not enforceable against Bankers First Savings Bank and Federal Paperboard Company, successors in title.

In May 1987 the Ricketsons purchased 177.32 of 318.19 acres of land owned by William Greene, Jr. The unrecorded closing statement, but not the recorded deed, stated: "Seller covenants that on any future sales of any remaining portion of any property that W. A. Greene, Jr., will offer a first right of refusal on the remaining property which right of refusal by Purchasers and the price paid in full not later than thirty (30) days from the date that a bona fide offer and contract to purchase is executed. Failure on the part of the Purchasers to give written notice of their intention to exercise the right of refusal within ten (10) days from the date of written notice of the intended sale shall terminate Purchasers' right of refusal and all rights of in and to remaining lands of Seller."

Greene's remaining land was the subject of several transactions before the one at issue. In June 1988, Greene gave a security deed on the property to Trust Company Bank. In March of the following year,

the Ricketsons' closing attorney recorded his personal affidavit stating that the closing documents from the Ricketsons' purchase provided that the Ricketsons "have first refusal on the remaining property belonging to W. A. Greene, Jr." Three weeks later, Greene gave a security deed on the property to appellee Bankers First Savings Bank, FSB, subject to the Trust Company deed, and "subject to the right of first refusal as reflected by the affidavit. . . ."

The next year, 1990, Greene filed for bankruptcy and applied to the bankruptcy court to abandon his remaining 140.87 acres to Bankers First in lieu of foreclosure in extinguishment of the debt to the bank. This debt included the Trust Company Bank debt because Bankers First had purchased that debt from Trust Company and had taken an assignment of the corresponding deed to secure debt. The court approved and the property was transferred to Bankers First by a deed in lieu of foreclosure on June 25. Three days later, Greene's father, W. A. Greene, Sr., purchased the property from Bankers First and took title by warranty deed. He borrowed the purchase money from Bankers First and executed a deed to secure debt to the bank.

The Ricketsons learned of these events sometime "around" that same June. Although the Ricketsons submitted an offer to purchase the property during the bankruptcy proceeding, they never specifically made demand or sued Greene or Bankers First for any violation of the right of first refusal in connection with the two June property transactions.

In September 1991, the Ricketsons received a joint letter from both Greenes which gave notice of a third party's contract to buy some of the remaining land then owned by the father and offered to sell pursuant to the Ricketsons' "first right of refusal" contained in the closing statement. As a result, Greene, Sr. sold approximately 46 of the remaining acres to the Ricketsons.

Greene, Sr. was unable to meet his obligations under the purchase money note in July 1993. Bankers First foreclosed the remaining 95.19 acres, taking title pursuant to a deed under power of sale. The bank sold the property to Federal Paperboard in June 1994.

In this suit filed in November 1995, the Ricketsons allege the sale to Federal Paperboard was made in violation of their right of first refusal. They do not contest any of the earlier transfers. Questions were raised at trial about where certain deeds were recorded, the effect of the affidavit and of the September 1991 letter, and whether Federal Paperboard had actual or constructive notice of the covenant. The trial court's ruling, based solely on a determination that the covenant did not run with the land, is the subject of both enumerations of error.

1. A covenant running with the land binds subsequent owners

with or without notice of the covenant.[1] The benefit or the burden of a covenant may run to the covenantee's or the covenantor's successors respectively.[2] The Ricketsons contend the burden of the affirmative covenant ran to obligate seller Greene's successors in interest and constituted a servitude on the 95.19 acres which landed in the hands of Federal Paperboard.

Georgia courts have expressed the requirements of running with the land thusly: " 'When the covenant is of a collateral nature to the land, it is a personal obligation and does not run with the land. . . . A covenant runs with the land when either the liability for its performance or the right to enforce it passes to the assignees of the land itself. In order that it may run with the land, its performance or nonperformance must affect the nature, quality, or value of the property demised, independent of collateral circumstances, or it must affect the mode of enjoyment, and there must be a privity between the contracting parties.' *Atlanta Consolidated St. R. Co. v. Jackson,* 108 Ga. 634, 638-9 (34 SE 184) (1899), quoting from 2 Kerr on Real Prop. § 1218."[3]

Similarly, quoting from American Jurisprudence, this Court has recognized that " '[i]t is essential . . . to the creation of a covenant running with the land that it attach to, or be annexed to, some interest or estate therein and that it relate to or concern the land or estate conveyed and the use, occupation, or enjoyment thereof. . . . In the event that the act to be performed is merely collateral to the land and does not relate to the property demised, then the assignee is not charged, though named in the covenant. The covenant is merely personal, and does not affect the land demised. Unless the agreement of the parties contains some element of a covenant which runs with the land, it can not be enforced at law, and a future grantee will hold the land free and clear.' "[4] But where the covenant conveys access to an interest in land, such as an easement, which is appurtenant to the land, it will be construed as running with the land in the absence of language clearly showing the intention to create mere personal interests.[5]

Aside from all questions of proper recordation of the covenant,

---

[1] *Wardlaw v. Southern R. Co.*, 199 Ga. 97, 98 (1) (33 SE2d 304) (1945).

[2] See *Jones v. Gaddy*, 259 Ga. 356, 359 (2) (380 SE2d 706) (1989). See generally Powell on Real Property, Vol. 9, § 60.04 [1] (1998).

[3] *Copelan v. Acree Oil Co.*, 249 Ga. 276, 277-278 (2) (290 SE2d 94) (1982). See also Restatement of the Law Third, Property (Servitude) § 1.3 (Tentative Draft No. 7, April 15, 1998) (definition).

[4] *Goldberg v. Varner*, 72 Ga. App. 673, 676, 677 (34 SE2d 722) (1945).

[5] *Barton v. Gammell*, 143 Ga. App. 291 (238 SE2d 445) (1977). See also *Feckoury v. Askew*, 244 Ga. 128, 130 (259 SE2d 70) (1979) (covenant of appurtenant easement runs with land).

the effect of the affidavit, or who had actual or constructive notice of the covenant, the decisive issue is whether the burden imposed by the covenant on Greene affects the nature, quality, value, use, occupation, or enjoyment of the 95.19 acres.

The burden of the covenant is the obligation to sell the land to the Ricketsons rather than to someone else at the same price the latter is willing to pay. If the right is exercised, the only difference in result is who owns the property. The nature, value, use, quality, occupation and enjoyment of the property remain unchanged. The covenant does not run with what was Greene's remaining land.[6]

*Hornsby v. Holt*[7] is not on point. The Supreme Court addressed whether a right of first refusal is breached by a sale under power of a security deed. There is a similar transaction here, the June 25, 1990 transfer to Bankers Trust, but it is not the subject of this suit. *Hornsby* may be authority for setting aside that transaction but not for the sale to Federal Paperboard. Similarly, in *Hinson v. Roberts*[8] the sale in question was the first by the covenantor (through his estate) and not a subsequent transaction for which the right would have to run with the land. *Scott v. Lester*[9] is likewise. Neither *Hasty v. Health Svc. Centers*,[10] *Shiver v. Benton*,[11] nor *Columbia Nitrogen Corp. v. Dean's Power Oil Co.*[12] involves any question of whether a right of first refusal runs with the land.

2. The language of the covenant does not require a different result by indicating that it runs with the land or that it applies to Greene's successors or assigns. Although the absence of these words is not determinative,[13] their absence is relevant.[14] "A promise respecting the use of land may be intended to be purely personal. It may be intended to be performed by the promisor only and to be binding upon him alone. There is no rule of law which will prevent such an intention from being effective. On the other hand, it may be intended that the successors of the promisor shall be bound as he was bound. Though it is possible that they may not become bound even though it was intended that they should be, since intention alone is not enough to cause them to be bound, they will not be bound unless it was intended that they should be."[15]

---

[6] Cf. *Feider v. Feider*, 699 P2d 801, 803-804 (Wash. App. 1985) (right of first refusal did not touch and concern land or run with land of grantee).

[7] 257 Ga. 341 (359 SE2d 646) (1987).

[8] 256 Ga. 396 (349 SE2d 454) (1986).

[9] 242 Ga. 730 (251 SE2d 257) (1978).

[10] 258 Ga. 625 (373 SE2d 356) (1988).

[11] 251 Ga. 284 (304 SE2d 903) (1983).

[12] 136 Ga. App. 879 (222 SE2d 602) (1975).

[13] *Feckoury v. Askew*, supra, 244 Ga. at 129.

[14] See *Jones v. Gaddy*, supra, 259 Ga. at 358 (2) (court must determine grantor's intent).

[15] Restatement of Property § 531, Comment a (1944).

Such an intention was not expressed by the parties, the covenant was not recorded, and no action was taken to enforce the obligation until suit was filed against subsequent owners of the land. Greene's obligation to the Ricketsons did not encumber the land so as to bind the appellees, as it was merely contractual and personal to Greene.

*Judgment affirmed. Pope, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JUNE 17, 1998 — 

*Jay M. Sawilowsky*, for appellants.
*Warlick, Tritt & Stebbins, Charles C. Stebbins III*, for appellees.