# CIRCUIT COURT OF FAIRFAX COUNTY

Fairfax County
Redevelopment and
Housing Authority

v.

James C. Riekse et al.

January 15, 2009

Case No. CL-2007-11400

BY JUDGE DENNIS J. SMITH

This matter came before the Court on Defendants Rajinder P. Kapani's and Rajesh Kapani's demurrer. At a hearing held on January 25, 2008, the Court noted the absence of Defendants James C. Riekse and Wells Fargo Bank, N.A., and continued the motion to February 29, 2008, to allow those parties to join the demurrer. Argument was heard and then, after some time, the Court requested additional briefing on a new issue. Another hearing was held on this issue, and the Court then took the matter under advisement.

## I. *Background*

Plaintiff Fairfax County Redevelopment and Housing Authority ("Housing Authority") manages the Moderate Income Direct Sales program, which provides income-eligible Fairfax County residents with the opportunity to purchase residential property at below-market prices, subject to the Housing Authority's option to repurchase such property at a specified price within thirty years of the date of sale.

The Housing Authority conveyed the property at issue in this case to Peter and Christine A. Tovar by a deed dated September 21, 1989 ("Original Deed"). Paragraphs Three and Five of the Original Deed provide, respectively:

> This conveyance is also made subject to the following covenants which are covenants running with the land, the burden of which covenants are assumed by Grantee as evidenced by Grantees' signatures hereon and by any subsequent successor in title as provided herein. . . .
>
> In the event that Grantee shall die . . . or in the event the Grantee shall determine to sell this Property at any time within thirty (30) years from the date of this Deed, then and in either event, the said Grantor, its successors, or assigns shall have the option to repurchase the Property.

The Tovars subjected the property to a deed of trust on September 18, 1995. Peter and Christine Tovar then conveyed the property to Christine A. Tovar by a deed dated October 28, 1997. Upon default of the debt secured by the deed of trust, a substitute trustee foreclosed upon the property. The trustees then conveyed the property to the Kapanis through a foreclosure sale on November 26, 2002. Finally, the Kapanis sold the property to Riekse on June 2, 2003.

The Housing Authority filed this action on September 19, 2007, seeking a declaration that the conveyance from the Kapanis to Riekse is void *ab initio* and an order that the Kapanis convey the property to the Housing Authority for the option price specified in the Original Deed. The Housing Authority asserted four claims: (1) breach of contract; (2) violation of restrictive covenant that runs with the land; (3) violation of restrictive covenant in equity; and (4) violation of condition subsequent. The Housing Authority later withdrew the breach of contract claim as to Riekse and Wells Fargo.

In their demurrer to Count II, Defendants assert that the right to repurchase cannot be enforced as a covenant running with the land because it does not "touch and concern" the land. In the demurrer to Count III, Defendants assert that "restrictive covenants in equity only apply to restrictions affecting the "use of land," for the benefit of an adjoining parcel and are enforceable by injunction." Finally, Defendants' demurrer to Count IV asserts that the strict conditions for divestment have not occurred and, thus, the condition subsequent was never triggered. I now address each of these points in turn.

## II. *Standard*

A demurrer tests the sufficiency of factual allegations to determine whether the pleadings state a cause of action. *Fun v. Virginia Military Inst.*, 245 Va. 249, 252, 427 S.E.2d 181 (1993). A demurrer "admits the truth of all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from the alleged facts." *Cox Cable Hampton Rds., Inc. v. City of Norfolk*, 242 Va. 394, 397, 410 S.E.2d 652 (1991). "Because a demurrer goes to the whole pleading to which it is addressed, it should be overruled if any part of the pleading states a cause of action upon which relief may be granted." *Doe v. Zwelling*, 270 Va. 594, 599, 620 S.E.2d 750 (2005).

## III. *Analysis*

### A. *The Demurrer Is Overruled as to Count II*

Virginia recognizes two types of restrictive covenants: "the common law doctrine of covenants running with the land and restrictive covenants in equity known as equitable easements and equitable servitudes." *Sloan v. Johnson*, 254 Va. 271, 274-75, 491 S.E.2d 725 (1997); *accord Mid-State Equip. Co. v. Bell*, 217 Va. 133, 140, 225 S.E.2d 877 (1976). The Housing Authority argues that their right to repurchase the property under the Original Deed constitutes both a real covenant running with the land and an equitable covenant.

To enforce the first type of restrictive covenant, Virginia law requires a party to prove the following elements: (1) privity between the original parties to the covenant (horizontal privity); (2) privity between the original parties and their successors in interest (vertical privity); (3) an intent by the original covenanting parties that the benefits and burdens of the covenant will run with

the land; (4) that the covenant "touches and concerns" the land; and (5) the covenant must be in writing. *Sloan*, 254 Va. at 276; *Sonoma Develop., Inc. v. Miller*, 258 Va. 163, 167, 515 S.E.2d 577 (1999). In examining restrictive covenants, any doubt or ambiguity is to be resolved against the restriction and in favor of the free use of the property, as such covenants "are not favored and must be strictly construed." *Barris v. Keswick Homes, L.L.C.*, 268 Va. 67, 71, 597 S.E.2d 54 (2004). Thus, a party seeking to enforce a restrictive covenant bears the burden of proving the elements set out above and that the covenant is applicable to the acts of which he complains. *Friedberg v. Riverpoint Bldg. Comm.*, 218 Va. 659, 665, 239 S.E.2d 106 (1977).

In the Complaint, the Housing Authority argues that its right to repurchase is a restrictive covenant running with the land. The first two elements of vertical and horizontal privity are satisfied. The covenant is also in writing as a valid restrictive covenant running with the land; it is specifically set forth in the Original Deed and clearly and unambiguously states that the intent of the parties is that the "covenant run with the land." Therefore, the only question remaining is whether the covenant touches and concerns the land.

It is important to note that the law on this issue varies widely from state to state. One of the most recent Virginia opinions on the topic was issued in 1950. In *Oliver v. Hewitt*, 191 Va. 163, 60 S.E.2d 1 (1950), the Supreme Court of Virginia determined that a non-competition restriction prohibiting the grantee's sale of groceries and soft drinks existed to protect the business interests of the grantor by only restricting the commercial use of the property, as opposed to restriction upon the "natural use and enjoyment" of the land. The Georgia Court of Appeals in *Ricketson v. Bankers First Savings Bank*, 233 Ga. App. 11, 503 S.E.2d 297 (1998), followed a similar "natural use and enjoyment test." In *Ricketson*, the Georgia Court held that a right of first refusal was a personal interest based in contract law and not a real covenant or an interest running with the land. *Id.* at 13-14. In *Runyon v. Paley*, 331 N.C. 293, 300, 416 S.E.2d 177 (1992), the North Carolina Supreme Court took a somewhat different approach in concluding that "[f]or a covenant to touch and concern the land, it is not necessary that the covenant have *a physical effect* on the land. It is sufficient that the covenant have some *economic impact* on the parties' ownership rights by, for example, enhancing the value of the dominant estate and decreasing the value of the servient estate. It is essential, however, that the covenant in some way affect the legal rights of the covenanting parties as landowners." (internal citations omitted) (emphasis added).

The County urges me to abandon the "touch and concern" element of restrictive covenants asserting that its continued viability is out of step with modern property and zoning law. Significantly, the Restatement, Third, of Property does away with the touch and concern doctrine all together. The Restatement, Third states that, in removing this element, "the purpose of changing from the touch or concern doctrine . . . is to allow innovative land development practices using servitudes, but it is not intended to remove courts from their historic role of safeguarding the public interest in maintaining the social utility of land resources." Restatement (Third) of Property § 3.2 (2000). The Restatement, Third shifts the traditional touch and concern issue to one of *"whether the servitude in issue poses such a threat to the public welfare that the rights or obligations it creates should not be allowed to run with the land." Id.* (emphasis added). Although Virginia has not adopted the Restatement, Third, of Property, under its framework the Housing Authority's right to repurchase would run with the land because it poses no threat to the public welfare. Indeed, the public welfare is benefited by the Housing Authority's right to repurchase the land for use as low/moderate income housing.

I find the rationale for elimination of the "touch and concern" element of covenants running with the land in all cases compelling, and I would strike it from Virginia law were it my place to do so. It is my function as a trial judge, however, to decide single cases, not broad principles. I therefore decline the invitation to usurp the role of the Virginia Supreme Court and will not base my decision on a restructuring of the requirements for valid restrictive covenants.

This case, however, deals with a specific plaintiff and a specific transaction, and my construction of the term "touch and concern" must be made in light of the specifics of the case. I must also note that the law is not immutable. Changing circumstances can cause the law to evolve. Property rules created "when the population was far less densely concentrated than at present and more often engaged in agriculture" may need to be re-examined. *Fancher v. Fagella*, 274 Va. 549, 553, 650 S.E.2d 519 (2007). Problematic societal conditions which lead to legislative action can also require a re-examination of principles and interpretations which might frustrate properly enacted laws designed to remedy modern problems. In this case, I must interpret the requirements for a valid restrictive covenant in light of duly enacted laws bearing upon the transaction which created the estate at issue and the parties involved in creating that estate.

The Fairfax County Redevelopment and Housing Authority, the Plaintiff in this action, was created by the voters of Fairfax County passing a

referendum put before them pursuant to Virginia Code § 36-4 of the Housing Authorities Law enacted in 1938. Virginia Code § 36-2 states the legislative findings and declaration of necessity for housing authorities and states in part:

> (4) It is a public purpose to promote the availability of affordable housing for all citizens of the Commonwealth and in particular to provide safe, decent, and sanitary housing for those citizens with low or moderate incomes. To that end, (i) . . . and (ii) the sale or lease of land and the acquisition, construction, rehabilitation, and operation of residential housing units for persons of low and moderate incomes are necessary for the public welfare and are public uses and public purposes for which public money may be spent and private property acquired by purchase or through the exercise of the power of eminent domain as authorized in this chapter and are governmental functions of grave concern to the Commonwealth.
>
> B. The necessity and the public purpose for the provisions hereinafter enacted are hereby declared as a matter of legislative determination.

The Housing Authority sold this property to the Tovars pursuing the goals of the Act, and the Tovars purchased the property with the condition that furthered the purpose of the Act. If I were to adopt a narrow interpretation of "touch and concern the land" by holding that an unfettered sale of the property did not "touch and concern" the land, I would frustrate actions taken by the Plaintiff and agreed to by the Grantees in pursuit of the legislative goals set out for it in Virginia Code § 36-2.

Other provisions in the Original Deed provide support for the conclusion that the covenants do "touch and concern" the property. For example, the Original Deed provides that the Grantee may only rent the Property "to persons of low or moderate income" or to "relatives of the grantee." Such provision certainly affects the natural use and enjoyment of the property consistent with Virginia law. Additionally, the "repurchase procedure" requires the Grantee to "give Grantor written notice that Grantee has received an offer to purchase the Property, attaching to said notice a copy of the written offer of purchase or proposed contract of sale which shall disclose the name and address and gross annual family income of the prospective purchaser of the property." These provisions and the Original Deed as a whole further evidence the intent of the parties that the right to repurchase affects the natural use and enjoyment of the property and thus "touch and concern" the property.

Accordingly, sale of a property to carry out the Housing Authority's goal of providing "safe, decent, and sanitary housing for those citizens with low or moderate incomes" touches and concerns this property.

"Persons of low income" means persons or families determined by the authority to lack the amount of income which is necessary to enable them to live in decent, safe, and sanitary dwellings. "Persons of moderate income" means persons or families determined by the authority to lack the amount of income necessary to obtain affordable housing. Virginia Code § 36-3.

## B. *The Demurrer Is Sustained as to Count III*

The Housing Authority's argument that the right to repurchase should be enforced as an equitable covenant fails. "By definition, an equitable servitude can only arise when a common grantor imposes a common restriction upon land developed for sale in lots." *Barner v. Chappell*, 266 Va. 277, 285-86, 585 S.E.2d 590 (2003) (citing *Forster v. Hall*, 265 Va. 293, 300, 576 S.E.2d 746 (2003)). The principal purpose of equitable servitudes is "to regulate the style and costs of buildings to be erected on a tract that is being sold in parcels for building lots, to restrict their location to certain distances from the street, and to prevent buildings in a locality from being put up or used for any other than residential purposes." *Cheatham v. Taylor*, 148 Va. 26, 37-39, 138 S.E. 545 (1927). The equity which is enforced prevents a third person, who has actual or constructive notice, from violating the equitable rights of another. *Id.* Here, no common grantor has imposed a common restriction upon land developed for sale in lots. Rather, the Housing Authority merely retained a right to repurchase the property on certain conditions. The fact that, after repurchasing the Property, the Housing Authority intended to use the property for low income housing does not establish the type of factual scenario necessary for creating an equitable servitude.

The Housing Authority relies heavily on *Mid-State Equipment Co. v. Bell*, 217 Va. 133, 225 S.E.2d 877 (1976), in support of its contention that their right to repurchase the Property should be enforced at equity as an equitable servitude. *Mid-State*, however, is distinguishable from the facts of this case. In *Mid-State*, it was a common land developer seeking to enforce the covenant to preserve the residential character and use of the land. The facts in this case do not establish that the property in question had a purpose similar to that in *Mid-State*. To the contrary, there are no facts in this case to support a finding that there was a common scheme or plan restricting the use of the Property.

The Housing Authority's right to repurchase does not constitute such a restriction on the use of the property that might establish a "common scheme or plan" of a developer. The Housing Authority argues that the contract restricted the use of the property to low income housing only. Even if this is true, there is no allegation of a common scheme or plan to be enforced in the neighborhood. Further, the facts alleged in the Complaint do not fit within the narrow guidelines set forth in *Barner*. Therefore, the demurrer to Count III is sustained.

C. *The Demurrer Is Overruled as to Count IV*

The right to repurchase may be accurately characterized as a condition subsequent under these facts. The parties appear to agree on this point, and both cite to *Trailsend Land Co. v. Virginia Holding Corp.*, 228 Va. 319, 321 S.E.2d 667 (1984), in support of this argument. Riekse and Wells Fargo Bank Demurrer, at 7, and Plaintiff's Opposition, at 6. "An option to repurchase is a condition subsequent." *Trailsend Land Co.*, 228 Va. at 323. Although, "a right of first refusal is distinguished from an absolute option in that the former does not entitle the [purchaser] to compel an unwilling owner to sell," there is no case law in Virginia suggesting that a right to repurchase, like an option, is not also a condition subsequent. *Hamlet v. Hayes*, 273 Va. 437, 443, n. 1, 641 S.E.2d 115 (2007) (internal citations omitted). The only disagreement between the parties is whether an event has occurred, triggering the Housing Authority's right to repurchase.

In considering this Demurrer, I am unwilling to find as a matter of law that foreclosure was contemplated in the Original Deed as an event that triggered the condition subsequent. Defendants argue that, under the Original Deed, the only events that could trigger the Housing Authority's right to repurchase are the death of the grantees or the determination of the Grantees to sell. Riekse and Wells Fargo Bank's Demurrer, at 9. In *Cities Service Oil Co. v. Estes*, 208 Va. 44, 45-47, 155 S.E.2d 59 (1967), the Supreme Court of Virginia addressed for the first time whether a right of first refusal to purchase certain property applied to a public judicial sale. The Court in *Cities Service* held that the right of first refusal did apply to a judicial sale. *Id.* at 47. The Court reasoned that, "since a right of first refusal is inserted in a lease for the benefit of the lessee, we must interpret it with that purpose in mind." *Id.* at 49. Nonetheless, I decline to find at this stage on Demurrer that the foreclosure sale constituted a "determination to sell" the property as the phrase is ambiguous.

Finally, this Court disagrees with Defendants' position that the Housing Authority's rights "would have been breached in 1995, when the Deed of Trust was granted, and, thus, FCRHA's claims would be outside the applicable statutes of limitation." Riekse and Wells Fargo Bank Demurrer, at n. 6. The Housing Authority's rights were not breached on the granting of the Deed of Trust; this did not convey a fee simple interest in the property and simply cannot be construed as a "determination to sell the property."

Similarly, the transfer from Peter and Christine Tovar to Christine Tovar was not a "determination to sell the property." The transfer to Christine Tovar did not trigger the right to repurchase because this transfer was essentially a deed of gift. The property was transferred to Christine Tovar as part of a property settlement for consideration of a mere ten dollars. Complaint, Exhibit E. Additionally, the transfer was between parties who were both named on the original deed. For these reasons, the first event that may have triggered the condition subsequent is the foreclosure sale. However, for the foregoing reasons, I decline to determine this issue on demurrer.

## IV. *Conclusion*

The Demurrer is sustained in part and overruled in part.