# CIRCUIT COURT OF FAIRFAX COUNTY

Janette Magallon

    v.

Wireless Unlimited, Inc., et al.

October 23, 2012

Case No. CL-2012-03867

By Judge Jonathan C. Thacher

This matter came before the Court on Defendant Wireless Unlimited, Inc.'s Demurrer. After considering the pleadings, briefs filed by counsel, and oral argument, the Court took the matter under advisement. For the reasons set forth below, Defendant's Demurrer is sustained in part and overruled in part.

*Background*

This case involves multiple claims that stem from an alleged sexual assault of an employee by her work supervisor. Plaintiff Janette Magallon filed her Complaint, naming as Defendants: (1) Wireless Unlimited, Inc. ("Wireless"), her former employer and a franchisor of Cricket Communications, Inc.; (2) Umer Mirza, her former supervisor and owner

of Wireless Unlimited; (3) Moeen Chaudhary, the alleged perpetrator of the sexual assault and the account manager for Cricket Communications, Inc. in the Wireless Unlimited stores; and (4) Cricket Communications, Inc. ("Cricket"), franchisor of Wireless Unlimited and Mr. Chaudhary's employer. The Complaint asserts the following eight counts:

Count I: Assault and Battery against Moeen Chaudhary;

Count II: Sexual Assault and Battery against Wireless Unlimited through *respondeat superior* liability;

Count III: Sexual Assault and Battery against Cricket through *respondeat superior* liability;

Count IV: Negligence or Gross Negligence against Wireless Unlimited for failure to warn;

Count V: Negligent Retention of Employment/Agent against Wireless Unlimited and Cricket;

Count VI: Defamation and Defamation *per Se* against Mr. Chaudhary and against Wireless Unlimited and Cricket through *respondeat superior* liability;

Count VII: Wrongful Termination of Employment for Opposing or Resisting Criminal Conduct against Wireless Unlimited;

Count VIII: Intentional Infliction of Emotional Distress against all Defendants.

Defendant Wireless Unlimited demurs to all counts in which it is named, Counts II, IV, V, VI, VII, and VIII.

## I. *Facts*

The following recitation of facts has been alleged in Plaintiff's Complaint. On demurrer, the Court must assume all facts alleged in the complaint to be true. *See Cox Cable Hampton Roads, Inc. v. City of Norfolk*, 242 Va. 394, 397, 410 S.E.2d 652 (1991). In November 2011, Ms. Magallon, then eighteen-years-old, was hired to work for Wireless Unlimited as a sales representative and the manger of two Wireless Unlimited stores located in Vienna, Virginia, and Manassas, Virginia. Wireless Unlimited, owned by Umir Mirza, operates several cell phone and wireless equipment stores in the Northern Virginia area and is a franchisee of Cricket Wireless, a national wireless service provider. Mr. Chaudhary, 35-years-old, is identified as a personal friend to Mr. Mirza and the Account Manager for Cricket assigned to the Vienna and Centreville Wireless stores, but does not appear to be a direct employee of Wireless Unlimited.

On December 4, 2011, at 10 p.m., Wireless Unlimited held a mandatory meeting at its Vienna location. When the meeting ended at 11:40 p.m., Mr. Chaudhary and Mr. Mirza, "pushed Ms. Magallon and others to have dinner

with them and other managers at a kabob restaurant approximately ten minutes from the store." (Compl. ¶ 40.) Dinner finished at 12:40 a.m., and Ms. Magallon asked another manager, Mr. Eggwin, for a ride home. Mr. Eggwin drove Ms. Magallon, Mr. Chaudhary, and Mr. Mirza to Mr. Mirza's home where Mr. Chaudhary's car was parked. Mr. Chaudhary offered to drive Ms. Magallon home. (Compl. ¶ 43.) Ms. Magallon agreed because Mr. Chaudhary lived closer to her home and she did not want to further inconvenience Mr. Eggwin, who lived in Woodbridge, Virginia. While driving Ms. Magallon home, Mr. Chaudhary stopped the car a few feet from her home and attempted to place his right hand inside her skirt and touch her private areas. (Compl. ¶ 45.) Ms. Magallon asserts she was stunned and shocked and asked Mr. Chaudhary to stop, to which he answered "shut up" because he would "be gentle." (Compl. ¶ 46.) Mr. Chaudhary then grabbed Ms. Magallon's breast and kissed her neck. (Compl. ¶ 47.) Ms. Magallon escaped the vehicle. As she exited the vehicle, Mr. Chaudhary told her that, if she told anyone, he would "hurt" her. (Compl. ¶ 48.)

In December 2011, Mr. Chaudhary noticed that Ms. Magallon had a Coach-brand handbag. He asked other managers how Ms. Magallon could afford an expensive bag. (Compl. ¶¶ 49-50.) He then claimed Ms. Magallon sold sex to afford the handbag and called her a prostitute. (Compl. ¶ 50.) On another occasion, Mr. Chaudhary told other managers, while not in Ms. Magallon's presence, that, if she did not make quota, he would publicly perform upon Ms. Magallon, and have her perform upon him, certain sexual acts in front of the store. (Compl. ¶ 51.)

On January 27, 2012, Mr. Chaudhary approached Ms. Magallon. He told her he was aware she had spoken to Samuel Ockman, a Cricket Wireless owner, and asked her why she had spoken to him. (Compl. ¶ 56.) When Ms. Magallon asked Mr. Chaudhary why he was inquiring about this conversation, which she explained was routine and involved issues with her W-2 forms, Mr. Chaudhary became visibly upset and began screaming at Ms. Magallon. (Compl. ¶58.) Ms. Magallon then told him she was resigning. *Id.* Ms. Magallon became frightened and attempted to walk back towards the store. At this point, Mr. Chaudhary grabbed and pulled Ms. Magallon's arm, and she struggled to get past him. (Compl. ¶ 60.) During this time, Mr. Chaudhary was screaming at Ms. Magallon, calling her called a "slut" and a "bitch," accused her of sleeping with Mr. Mirza, and told her she would never work at another Cricket store. (Compl. ¶ 72.) These comments were made in the presence of Mr. Mirza, the store owner, and other managers, including Mr. Eggwin. None of these individuals acted or intervened. Mr. Chaudhary continued to scream at Ms. Magallon, and said, "Bitch, I fucking fired you," and repeatedly said directly to Ms. Magallon, "Bitch, I will fucking slap you." (Compl. ¶¶ 67, 76.) After Ms. Magallon told Mr. Mirza she was resigning, Mr. Mirza took Ms. Magallon's keys in an attempt to recover the store keys she had in her possession. However, in

the process, he took her car and house keys. (Compl. ¶¶ 66, 79.) Mr. Mirza returned the car key, but kept the house key and other keys on her key chain. (Compl. ¶ 79.) As a result, Ms. Magallon stayed in a hotel until she recovered her keys. (Compl. ¶ 87.) Upon leaving the store, Mr. Chaudhary screamed at Ms. Magallon "Bitch, get away from the store or I am going to call the police." (Compl. ¶ 84.)

Following the incident, Ms. Magallon sought medical attention for her fear, anxiety, depression, and frequent vomiting. (Compl. ¶ 88.) Suffering from post-traumatic stress, Ms. Magallon was prescribed Zoloft and another medication to control her vomiting. *Id.*

## Analysis

### A. *Standard of Review*

In Virginia, a "demurrer tests the legal sufficiency of a pleading and can be sustained if the pleading, considered in the light most favorable to the plaintiff, fails to state a valid cause of action." *Kitchen v. City of Newport News*, 275 Va. 378, 385-86, 657 S.E.2d 132 (2008) (citing *Welding, Inc. v. Bland Cnty. Serv. Auth.*, 261 Va. 218, 226, 541 S.E.2d 909 (2001)). On demurrer, the court must admit the truth of all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from the alleged facts. *Cox Cable*, 242 Va. at 397.

### B. *Respondeat Superior Liability: Principle-Agent Relationship*

Counts II, VI, and VIII rely, either wholly or partially, upon a claim that Wireless Unlimited is vicariously liable for the actions of Mr. Chaudhary through the doctrine of *respondeat superior*. In Virginia, the doctrine of *respondeat superior* imposes liability on an employer for the tortious acts of its employees, but not for the acts of independent contractors. *Sanchez* does mention some exceptions to this general rule, none of which, however, apply to this case. *Sanchez*, 270 Va. at 305, n. 5. *Sanchez v. Medicorp Health Sys.*, 270 Va. 299, 304, 618 S.E.2d 331 (2005). To determine if an individual is an employee, Virginia law weighs four elements: (1) selection and engagement of the servant; (2) payment of wages; (3) power of dismissal; and (4) power to control the servant's actions. *Dillon Const. v. Carter*, 55. Va. App. 426, 430-31, 686 S.E.2d 542 (2009). While the power of control is considered to be the most important factor, a principal-agent relationship may be inferred by the actions of those involved and surrounding facts and circumstances of the case, and is normally a question to be resolved by the jury. *Acordia of Va. Ins. Agency, Inc. v. Genito Glenn, L.P.*, 263 Va. 377, 384, 560 S.E.2d 246 (2002).

Ms. Magallon's Complaint clearly explains that Mr. Chaudhary was not an official employee of Wireless but was employed as a representative for Cricket in the Wireless stores. (Compl. ¶¶ 10, 19, 30, 34.) The Complaint also states that a principal-agent relationship exists between Wireless Unlimited and Mr. Chaudhary and that Wireless Unlimited possessed control over Mr. Chaudhary's actions. (Compl. ¶ 19.) To support this contention, Ms. Magallon asserts that "Wireless Unlimited allowed Mr. Chaudhary to manage Wireless Unlimited's employees and allowed Mr. Chaudhary to participate in Wireless Unlimited's operational and management decisions." (Compl. ¶ 35.) Additionally, Mr. Chaudhary could enforce sales quotas and ordered Ms. Magallon to take pictures of a marketing effort at the store. (Compl. ¶¶ 51, 53.) Lastly, Mr. Chaudhary claimed he had the right to terminate Ms. Magallon's employment. (Compl. ¶ 67.)

. At first blush, these pleaded facts seem to be instances of Mr. Chaudhary's exercising control of the actions of Wireless Unlimited and its employees, rather than Wireless Unlimited exercising the requisite control over Mr. Chaudhary. However, admitting all material facts as true and viewing the facts and the inferences thereof in the light most favorable to Ms. Magallon, the Court reasonably concludes that a principle-agent relationship existed between Wireless Unlimited and Mr. Chaudhary. According to the facts pleaded in Ms. Magallon's Complaint, Wireless Unlimited has allowed Mr. Chaudhary to exercise managerial duties on its behalf. The management of employees may be considered a business's most essential duty, and Wireless Unlimited should not be able to absolve itself of liability by surrendering this duty to others. Based on the conduct described in the Complaint, Wireless Unlimited's customers, as well as its employees, may have reasonably inferred that Mr. Chaudhary was acting under the authority of Wireless Unlimited. Whether Mr. Chaudhary was permitted such authority is a matter that should be resolved by the finder of fact.

Because an agency relationship may be inferred from the conduct of the parties and surrounding facts and circumstances pleaded in the Complaint, the Court holds that Ms. Magallon has properly pleaded claims allowing Wireless to be held vicariously liable for the actions of Mr. Chaudhary through a theory of *respondeat superior*.

### C. *Count II: Sexual Assault and Battery; Scope of Employment*

Wireless Unlimited contends that the actions involving the sexual assault by Mr. Chaudhary fell outside the scope of his employment. In Virginia, an employer is only liable through *respondeat superior* if the employee's actions occurred within the scope of his employment. *See Gina Chin & Assocs., Inc. v. First Union Bank*, 260 Va. 533, 540-41, 537 S.E.2d 573 (2000). However, when a plaintiff presents evidence sufficient to show a principal-agent relationship, she has demonstrated a *prima facie* case and a

presumption of liability, shifting the burden to the defense to show the act was committed outside the scope of employment. *See Majorana v. Crown Cent. Petroleum Corp.*, 260 Va. 521, 526-27, 539 S.E.2d 426 (2000). As a result of such burden-shifting, the issue concerning scope of employment presents "questions for the jury and [is] rarely decided on demurrer." *Beach v. McKenney*, 82 Va. Cir. 436, 439 (Charlottesville 2011).

In her Complaint, Ms. Magallon states that the sexual assault in question occurred after Mr. Chaudhary drove her home following a mandatory employee meeting and a dinner, in which she was pressured to attend by her supervisors. (Compl. ¶¶ 39-48.) The Complaint also states that this incident occurred within the scope of Mr. Chaudhary's duties as an agent of Wireless. (Compl. ¶ 105.) If a principle-agent relationship is to be assumed, then a presumption exists that this act occurred during the course of Mr. Chaudhary's employment. Therefore, the issue of scope of employment is an issue to be adjudicated by a finder of fact. For the foregoing reasons, the Court overrules Wireless Unlimited's Demurrer to Count II of the Complaint.

## D. *Count IV: Negligence or Gross Negligence for Failure To Warn*

In her Complaint, Ms. Magallon claims that Wireless Unlimited, as her employer, had a duty to protect her from harm. She alleges that Wireless Unlimited failed to protect her by not warning her of Mr. Chaudhary's sexually inappropriate behavior in the workplace and by not taking any remedial measures. It is worth noting that the assault mentioned in this claim involves only the confrontation between Ms. Magallon and Mr. Chaudhary that took place outside the Wireless Unlimited store on January 27, 2012. The alleged sexual assault that occurred in Mr. Chaudhary's car on December 4, 2011, happened before any of the inappropriate statements were made by Mr. Chaudhary in the store that Ms. Magallon claims gave rise to Wireless Unlimited's duty to warn and protect her. There are no facts pleaded in the Complaint that show any employee of Wireless Unlimited had any knowledge of the December 2011 sexual assault. In Virginia, the employer-employee relationship gives rise to a special duty to anticipate and guard against the intentional or criminal conduct of others. *A.H. v. Rockingham Publ'g Co.*, 255 Va. 216, 220, 495 S.E.2d 482 (1998) (citing Restatement (Second) of Torts, § 302(b), cmt. E (B) (1965)). An employer does not have a duty to protect an employee from all dangers, but does have a duty to protect the employee from dangers that are known or reasonably foreseeable. *Id.* at 220-21.

While generally "acts of assaultive criminal behavior by third persons cannot reasonably be foreseen," the Court must take all facts pleaded in the Complaint as true. *Id.* at 222. Ms. Magallon's Complaint states that employees of Wireless Unlimited, including Wireless Unlimited's owner

Mr. Mirza, were aware of harassing statements made by Mr. Chaudhary that created a reasonably foreseeable risk that Ms. Magallon would be assaulted by Mr. Chaudhary. (Compl. ¶¶ 50, 51, 124.) On one occasion, Mr. Chaudhary told Mr. Mirza and other employees that he would perform upon Ms. Magallon, and have Ms. Magallon perform upon him, certain sexual acts in front of others outside of the store. (Compl. ¶ 51.) Whether these statements created a reasonably foreseeable risk to Ms. Magallon that should have been addressed by Wireless Unlimited is an issue of fact that should not be decided at this stage of the litigation. Admitting the statements in the Complaint as true, the Court finds that Ms. Magallon has stated a valid claim for negligent failure to warn. Accordingly, the Court overrules Wireless Unlimited's Demurrer to Count IV.

### E. *Count V: Negligent Retention of Employee/Agent*

Ms. Magallon claims in Count V of her Complaint that Wireless Unlimited was negligent in retaining the services of Mr. Chaudhary after being alerted to the likelihood he would behave tortiously toward Wireless Unlimited employees, based on the inappropriate comments he made regarding Ms. Magallon in the presence of other Wireless supervisors. (Compl. at 13.) Virginia recognizes a claim of negligent retention when an employer retains the services of an employee or independent contractor when he knows, or should have known, that the employee was dangerous and likely to harm others that are owed a duty of care by the employer. *See Southeast Apts. Mgmt., Inc. v. Jackman,* 257 Va. 256, 260-61, 513 S.E.2d 395 (1999); *Phillip Morris, Inc. v. Emerson,* 235 Va. 380, 401, 368 S.E.2d 268 (1988).

This case is unlike *Southeast Apartments,* where an employer was not held liable for the sexual assault of an employee because potential warning signs did not specifically indicate a potential to commit the tort committed. 257 Va. at 261-62. The actions of Mr. Chaudhary, as pleaded, specifically relate to the tortious actions later taken by Mr. Chaudhary and should have put Wireless Unlimited on notice. The Complaint states that Mr. Chaudhary made sexually explicit and violent comments regarding Ms. Magallon in front of Wireless Unlimited supervisors. (Compl. ¶ 51.) These comments should have put Mr. Mirza and Wireless Unlimited on notice that Mr. Chaudhary could potentially behave violently and inappropriately toward Ms. Magallon and that he was unfit to manage her properly. Additionally, while Wireless Unlimited may not have been able to affect Mr. Chaudhary's position as an account manager for Cricket, Wireless Unlimited still maintained a principal-agent relationship with Mr. Chaudhary by allowing him to make managerial decisions for Wireless Unlimited and supervise its employees. Such failure to limit Mr. Chaudhary's contact with Ms. Magallon and the continued use of his services in a managerial capacity

constitutes an actionable claim, which Ms. Magallon properly pleaded in her Complaint. For the forgoing reasons, the Court overrules Wireless Unlimited's Demurrer to Count V.

## F. *Count VI: Defamation and Defamation per Se*

Ms. Magallon states a claim for defamation and defamation *per se* for alleged statements made by Mr. Chaudhary, and she asserts that Wireless Unlimited is liable under the theory of *respondeat superior*. As explained above, the Court holds that Ms. Magallon properly pleaded a claim of *respondeat superior* liability.

In Virginia, defamation requires a showing that the defendant published a false factual statement that concerns and harms the plaintiff or the plaintiff's reputation. *See Hyland v. Raytheon Tech. Servs. Co.*, 277 Va. 40, 46, 670 S.E.2d 746 (2009). Statements that cause "prejudice to a person in her profession" constitute defamation *per se*. *Id*. In Virginia, a party must plead defamation *in haec verba*, with the exact words stated in the complaint. *Federal Land Bank of Baltimore v. Birchfield*, 173 Va. 200, 215, 3 S.E.2d 405 (1939).

Ms. Magallon claims that Mr. Chaudhary called her a "slut," "bitch," "whore," "prostitute," and that she had sexual relations with Mr. Mirza. (Compl. ¶¶ 50, 67, 72, 75, 84.) Additionally, after Ms. Magallon resigned, Mr. Chaudhary said, "[b]itch, I fucking fired you," and later, "[b]itch, get away from the store or I am going to call the police." (Compl. ¶¶ 67, 84.) With the exception of the claim that Ms. Magallon had sex with Mr. Mirza and the use of the term "whore," all statements have been pleaded *in haec verba*. There are no quoted statements with respect to the claim Mr. Chaudhary stated Ms. Magallon had sex with Mr. Mirza. The term "whore" is quoted in ¶ 75, but as something said by Ms. Magallon to Mr. Chaudhary when confronting him about things he had said about her.

Words that falsely speak towards a woman's chastity and character are actionable as defamation in Virginia. *See* Va. Code Ann. § 18.2-417. The words "slut," "whore," "prostitute," and "bitch" fit this meaning under the Virginia Code. Additionally, according to Ms. Magallon's Complaint, the phrases "bitch, I fucking fired you," and "bitch, get away from the store or I am going to call the police" may infer that Ms. Magallon had been fired for some criminal offense. Such inference may very well harm her reputation and may be prejudicial to Ms. Magallon's professional standing. Therefore, Ms. Magallon's Complaint properly pleads a claim for defamation for Mr. Chaudhary's actions, to which Wireless Unlimited may be held liable. Accordingly, the Court overrules Wireless Unlimited's Demurrer to Count VI.

### G. *Count VII: Wrongful Termination*

Count VII of Ms. Magallon's Complaint states a cause of action for "Common Law Wrongful Termination of Employment for Opposing or Resisting Criminal Conduct." (Compl. at 25.) The Complaint also makes it clear, however, that Ms. Magallon was not terminated by Wireless Unlimited, but that she resigned. (Compl. ¶ 65.) ("Ms. Magallon told Mr. Mirza that she was resigning."). While the Complaint alleges that Mr. Chaudhary believed he had fired Ms. Magallon, his statement is offered in the Complaint as a false statement to support Ms. Magallon's defamation claim. (Compl. ¶ 144.) Moreover, wrongful constructive discharge is not pleaded or mentioned anywhere in the Complaint. Accordingly, Wireless Unlimited's Demurrer as to Count VII must be sustained for the simple reason that the Complaint does not allege that Ms. Magallon's employment was terminated by Wireless Unlimited.

### H. *Count VIII: Intentional Infliction of Emotional Distress*

A claim for Intentional Infliction of Emotional Distress ("I.I.E.D.") is generally disfavored under Virginia law. *Harris v. Kreutzer*, 271 Va. 188, 204, 624 S.E.2d 24 (2006). To succeed on a claim for I.I.E.D., four elements must be proven: (1) the conduct was intentional or reckless; (2) the behavior was outrageous and intolerable; (3) the distress is causally linked to the defendant's actions; and (4) the distress suffered was severe. *Womack v. Eldridge*, 215 Va. 338, 342, 210 S.E.2d 145 (1974). Wireless Unlimited's Demurrer only challenges the second element, that is, whether the conduct was outrageous or intolerable.

To meet the high standard of outrageousness established in Virginia I.I.E.D. cases, the actions must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Russo v. White*, 241 Va. 23, 27, 400 S.E.2d 160 (1991). The requirement is aimed at limiting lawsuits where only "bad manners and hurt feelings are involved." *Womack*, 215 Va. at 342.

As established above, the Court finds that Wireless Unlimited may be held vicariously liable for Mr. Chaudhary's actions. In addition to allegedly sexually assaulting an employee over whom he acted with authority, Mr. Chaudhary made, what the Court considers, wildly harassing and harmful comments about Ms. Magallon to her fellow employees and supervisors at Wireless Unlimited. When Ms. Magallon confronted Mr. Chaudhary about the comments he made, Mr. Chaudhary angrily screamed at Ms. Magallon, threatening violence against her, while profanely disparaging her character. The Court believes Mr. Chaudhary's alleged behavior, deemed true for purposes of the Demurrer, extends far beyond poor manners. Moreover, the

alleged behavior may be considered, given the position of authority held by Mr. Chaudhary over Plaintiff, to be intolerable in a civilized community. Therefore, the Court finds that the Complaint pleads facts that demonstrate Mr. Chaudhary's behavior was outrageous. For these reasons, Wireless Unlimited's Demurrer to Count VIII of Ms. Magallon's Complaint is overruled.

## Conclusion

For the foregoing reasons, Defendant Wireless Unlimited's Demurrer is overruled as to Counts II, IV, V, VI, and VIII. The Demurrer is sustained as to Count VII, the claim of Wrongful Termination.